Dennis J. DOMEGAN, Plaintiff,
Appellee,

v.

Joseph PONTE, et al., Defendants,
Appellants (Two Cases).

Nos. 91–1625, 91–1753.

United States Court of Appeals,
First Circuit.

Heard Dec. 4, 1991.

Decided Aug. 10, 1992.

Stephen G. Dietrick, Deputy Gen. Counsel, with whom Nancy Ankers White, Sp. Asst. Atty. Gen., Boston, Mass., was on brief for defendants, appellants.

Paul E. Nemser with whom Paula M. Bagger and Goodwin, Procter & Hoar, Boston, Mass., were on brief for plaintiff, appellee.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

After former inmate Dennis J. Domegan won a one dollar damage award in a civil rights action against certain Massachusetts corrections officials, the district court approved an attorney fee award against the defendants in the amount of $41,441.55 under 42 U.S.C. § 1988. The defendant officials challenge the fee award primarily on the ground that Domegan cannot be considered a "prevailing party" in light of the results achieved in litigation. With modifications to the amount of the award, we affirm the district court judgment.

I

BACKGROUND

On August 15, 1983, while imprisoned at the Massachusetts Correctional Institution at Walpole ("MCI–Walpole"), Domegan lodged a *pro se* complaint in the United States District Court for the District of Massachusetts, alleging civil rights violations under the Eighth and Fourteenth Amendments to the United States Constitution. The complaint stemmed from Domegan's disciplinary placement on the "Alternate Feeding Program" ("AFP") at MCI–Walpole in May and again in July of 1983.[1] At that time, each meal served to AFP inmates, including Domegan, consisted entirely of two cheese sandwiches. The solid steel doors of AFP inmate cells remained closed. The inmate was given no hearing prior to the AFP placement. AFP status was reviewed every five days by the prison official who recommended the particular placement. Domegan remained on AFP for seven and one-half days in May 1983, and for five days in July 1983.

During March 1984, the district court appointed Goodwin, Procter & Hoar [hereinafter Procter & Hoar] to represent Domegan. The final amended complaint asserted three causes of action: cruel and unusual punishment (Eighth and Fourteenth Amendments; 42 U.S.C. § 1983; M.G.L. c. 12, §§ 11H, 11*I*);[2] violation of due process (Fourteenth Amendment; 42 U.S.C. § 1983; M.G.L. c. 12, §§ 11H, 11*I*); and violation of

---

1. The May placement occurred after Domegan threw his food tray and human waste against the wall outside his cell; in July, he threw his food and tray outside his cell.

2. Initially, Domegan sought to establish that the AFP was violative of the Eighth Amendment, facially and as applied, but later relinquished the facial claim. The "as applied" claim alleged that the defendant officers and sergeants assigned to the AFP: (i) turned off the electricity to Domegan's cell to prevent him from complying with the AFP regimen for receiving food at meal time; (ii) refused to feed him, knowing that he could not comply with the AFP regimen; and (iii) turned off his water supply.

the Massachusetts Civil Rights Act (M.G.L. c. 12, § 11*I*). The final amended complaint demanded declaratory and injunctive relief, compensatory damages totaling $50,000, and $35,000 in punitive damages from each of the ten defendants.[3]

Domegan was granted summary judgment on the procedural due process claim. The case proceeded to trial on the remaining claims in March 1989. The jury awarded Domegan $1.00 in "compensatory" damages on the due process claim, but returned verdicts for all defendants on the remaining Eighth Amendment claims. Judgment was entered in the amount of $1.00 against Ponte, Leppert, and Gallagher.[4] Domegan requested attorney fees and costs in the amount of $88,655.16, pursuant to 42 U.S.C. § 1988. Although the district court determined that Domegan was a "prevailing party" entitled to recover a reasonable attorney fee, it reduced the amount of the award to $41,441.55 in light of the limited success achieved in litigation. The defendants challenge the fee award on several grounds.[5]

## II

## DISCUSSION

### A. *Appellate Jurisdiction*

The district court "Memorandum and Order" awarding attorney fees was entered on May 24, 1991. A defective notice of appeal (No. 91–1625) was filed on June 24, 1991, naming no appellant except Ponte, and then only in the following caption:

"Domegan v. Ponte, et al." *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 314–15, 318, 108 S.Ct. 2405, 2407–08, 101 L.Ed.2d 285 (1988) (use of "et al." does not satisfy Fed.R.App.P. 3(c) requirement that notice of appeal specify parties appealing); *Pontarelli v. Stone*, 930 F.2d 104, 108–09 (1st Cir.1991) (same). In response to our order to show cause why the appeal ought not be dismissed except as to Ponte, on July 16 a motion for permission to file an amended notice of appeal was filed by defendants' counsel with the district court. *See* Fed.R.App.P. 4(a)(5). The district court granted the motion *ex parte* on the following day. *But see id.* ("Notice of any such motion which is filed after the expiration of the prescribed time shall be given to the other parties in accordance with local rules."). *See also* D.Mass.R. 7.1(A)(2), (B), (E). An amended notice of appeal (No. 91–1753), naming all ten appellants, was promptly filed.

Domegan contends that the *ex parte* district court order, permitting appellants to file a corrected notice of appeal after the expiration of the original appeal period, was ineffective since the fourteen-day notice required by Local Rule 7.1 was not served. *See* Fed.R.App.P. 4(a)(5); D.Mass.R. 7.1(A)(2), (B), (E); *see also, e.g., Hable v. Pairolero*, 915 F.2d 394, 395 (8th Cir.1990) (requiring notice of rule 4(a)(5) motion); *Truett v. Johns–Manville Sales Corp.*, 725 F.2d 1301, 1302 (11th Cir.1984) (same). Domegan also challenges the sufficiency of the showing of "good cause" or

---

**3.** The ten defendants named in the final amended complaint were Joseph J. Ponte, Superintendent at MCI–Walpole; Frank Leppert, Administrator of the Department Segregation Unit ("DSU") at MCI–Walpole; Peter Gallagher, Acting DSU Administrator; Sergeants Anthony Silva and James Brooks; and Officers Carl Harrison, Gary Mendes, Christopher Pires, Patrick Smith, and Brian Bissonnette. Three other defendants were named in earlier complaints but were dropped from the final amended complaint.

On November 1, 1983, two and one-half months after Domegan filed his *pro se* complaint, MCI–Walpole instituted a more varied and nutritious menu for AFP inmates. In 1985, MCI–Walpole revised its post-deprivation review procedures, requiring that each AFP inmate's

status be reassessed after each meal. On or about October 11, 1988, prior to trial, Domegan was released from state custody, and the claims for injunctive and declaratory relief were not pursued.

**4.** It is not clear why judgment was never entered against the other seven defendants.

**5.** Although judgment was entered only against defendants Ponte, Leppert and Gallagher, the other seven defendants joined the appeal because the attorney fee award ran against "defendants." As Domegan correctly concedes, however, there is no basis for an award against the seven codefendants who were found not liable. Accordingly, we dismiss these seven defendants-appellants.

"excusable neglect" required under Fed. R.App.P. 4(a)(5). *See, e.g., Pontarelli*, 930 F.2d at 109–112. We need not address Domegan's contentions, however, as the initial notice of appeal was premature.

■ The district court "Memorandum and Order," entered May 24, did not satisfy the "separate document" rule. *See* Fed. R.Civ.P. 58 advisory committee note (1963) ("The amended rule ... requir[es] that there be a judgment set out on a separate document—*distinct from any opinion or memorandum*—which provides the basis for the entry of judgment.") (emphasis added); *Fiore v. Washington County Community Mental Health Ctr.*, 960 F.2d 229, 234–35 (1st Cir.1992) (en banc) (discussing generally the nature of a separate document); *Smith v. Massachusetts Dep't of Correction*, 936 F.2d 1390, 1393–94 (1st Cir.1991) (memorandum and order does not constitute "separate document"); *In re Smith Corset Shops, Inc.*, 696 F.2d 971, 975 (1st Cir.1982) (same, applying analogous Bankruptcy Rule). As the order appealed from was not a "final judgment," *see* Fed.R.Civ.P. 54(a), 58, the appeal period never commenced running prior to the filing of the corrected notice of appeal. Fed. R.App.P. 4(a)(1), (7); *Smith*, 936 F.2d at 1394; *Scola v. Boat Frances, R., Inc.*, 618 F.2d 147, 151 (1st Cir.1980); *see also Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384–86, 98 S.Ct. 1117, 1120–21, 55 L.Ed.2d 357 (1978) (per curiam) (purpose of "separate document" rule is to promote greater predictability as to when time for appeal begins to run); *Fiore*, 960 F.2d at 233 (same).[6]

■ Although appellants at all times treated the May 24 "Memorandum and Order" as an appealable order, the "separate document" rule is to be strictly applied as concerns the commencement of the appeal period. *See United States v. Indrelunas*, 411 U.S. 216, 221–22, 93 S.Ct. 1562, 1565, 36 L.Ed.2d 202 (1973) (per curiam) (applying rule 58 mechanically notwithstanding previous aborted appeal by same appellant within appeal period); *Fiore*, 960 F.2d at 235 (discussing technicality of rule 58); *Gregson & Assocs. Architects v. Government of the V.I.*, 675 F.2d 589, 592–93 (3d Cir.1982) (*Indrelunas* applied despite both parties' treatment of memorandum opinion as appealable order); *Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 688–90 (4th Cir.1978) ("nor are we free to penalize plaintiffs ... by binding them to their erroneous assertion that judgments" had been entered); *see also Fiore*, 960 F.2d at 237 (emphasizing that the "separate document" requirement "should always be interpreted 'to prevent loss of the right to appeal, not to facilitate loss' ") (quoting *Bankers Trust*, 435 U.S. at 386, 98 S.Ct. at 1121); *Willhauck v. Halpin*, 919 F.2d 788, 792 (1st Cir.1990) (same); 9 *Moore's Federal Practice* ¶ 58.02.1[2], at 58–20 to 21. Nevertheless, a notice of appeal deemed premature due to noncompliance with the "separate document" rule does not deprive the appellate court of subject matter jurisdiction, *Bankers Trust*, 435 U.S. at 384, 385, 98 S.Ct. at 1120; *see also Smith*, 936 F.2d at 1394 (applying *Bankers Trust*), and the appeal may proceed in the normal course where the court of appeals determines that the "separate document" requirement was waived by the parties. *Bankers Trust*, 435 U.S. at 384–86, 98 S.Ct. at 1120–21; *Smith*, 936 F.2d at 1394.

■ The district court treated its May 24 "Memorandum and Order" as an appealable order; it was duly docketed; and no party challenged appellate jurisdiction for failure to comply with the "separate document" requirement. *See Smith*, 936 F.2d at 1394 (finding waiver); *see also Bankers Trust*, 435 U.S. at 387–88, 98 S.Ct. at 1121 (considering same factors). *Compare Fiore*, 960 F.2d at 232, 237. All parties to the present appeal consistently treated the May 24 "Memorandum and Order" as a

---

6. We raise the "separate document" issue *sua sponte,* as it is intertwined with Domegan's jurisdictional challenge. *See, e.g., Caperton v. Beatrice Pocahontas Coal Co.,* 585 F.2d 683, 688–89 (4th Cir.1978) (raising "separate document" issue *sua sponte* ); *see also Parisie v. Greer,* 705 F.2d 882, 890–91 (7th Cir.) (Eschbach, J.) (discussing duty of court to raise "separate document" issue *sua sponte* ), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 261 *and cert. denied,* 464 U.S. 950, 104 S.Ct. 366, 78 L.Ed.2d 326 (1983).

final judgment and there is no suggestion that unfair prejudice would be occasioned any party by our assertion of appellate jurisdiction, without remanding for formal compliance with the "separate document" requirement. *See Smith*, 936 F.2d at 1394 (assertion of appellate jurisdiction proper, as parties waived "separate document" requirement and would not be prejudiced). Moreover, dismissal of the second notice of appeal in these circumstances, solely to permit compliance with the "separate document" rule, would force "[w]heels [to] spin for no practical purpose." *Bankers Trust*, 435 U.S. at 385, 98 S.Ct. at 1120; *Smith*, 936 F.2d at 1394 ("We will not needlessly 'force the parties round and round the mulberry bush'...." (quoting *Jusino v. Zayas*, 875 F.2d 986, 989–90 (1st Cir.1989)).

## B. *The Merits*

### 1. *"Prevailing Party"*

■ The principal focus of appellants' discontent with the fee allowance in the instant case is that the district court determined that Domegan was a "prevailing party" even though he obtained only a one dollar damage award. Absent "special circumstances" which would render an award unjust, ordinarily a civil rights plaintiff who qualifies as a "prevailing party" is entitled to a reasonable award of attorney fees under 42 U.S.C. § 1988.[7] *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983); *de Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 234 (1st Cir.1990); *Stefan v. Laurenitis*, 889 F.2d 363, 370 (1st Cir.1989).

■ A prevailing party is one who "has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the [plaintiff] sought in bringing suit'...."

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989) [hereinafter *Texas Teachers*] (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). "[A]t a minimum ... the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Id.* at 792, 109 S.Ct. at 1493. Moreover, even under this "generous formulation," as the Court stated in *Texas Teachers*, the plaintiff cannot qualify as a "prevailing party" if his "success on a legal claim can be characterized as purely technical or *de minimis*...." *Id.* "The touchstone of the prevailing party inquiry must be the *material alteration* of the legal relationship of the parties in a manner *which Congress sought to promote in the fee statute*." *Id.* at 792–93, 109 S.Ct. at 1493 (emphasis added).

■ The district court determination that Domegan met the "prevailing party" test is subject to *de novo* review. *See Romberg v. Nichols*, 953 F.2d 1152, 1156 (9th Cir.1992) ("We must reverse ... if the district court applied incorrect legal standards to reach [the factual findings underlying its "prevailing party" determination].")*; Guglietti v. Secretary of Health & Human Services*, 900 F.2d 397, 399 (1st Cir.1990) (where normal deference due EAJA fee award could not be accorded because district court misapprehended the record, court of appeals would decide case, rather than remand, as the facts were not in genuine dispute and the "prevailing party" question is "largely one of law ..."). *But cf. McDonald v. Secretary of Health & Human Services*, 884 F.2d 1468, 1474 (1st Cir.1989) ("abuse of discretion" standard governs review of "prevailing party" determination in EAJA fee award cases).[8]

---

7. Section 1988 provides, in part: "In any action or proceeding to enforce a provision of section[ ] ... 1983 ..., the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.

8. *McDonald* broadly established an "abuse of discretion" standard of review for all "prevailing party" determinations in EAJA cases. As

subsequently demonstrated in *Guglietti*, however, certain aspects of the "prevailing party" determination in a particular case may turn solely on the proper legal standard, making *de novo* review appropriate. The "prevailing party" determination in the present case does not entail any of the considerations which led us to apply a deferential standard of review in *McDonald*. Nor does it involve fact-based inquiries like those we found appropriate for def-

■ Although Domegan met with no success on the Eighth Amendment and state law claims, he obtained a favorable verdict on the procedural due process claim, a "significant issue in litigation." *See Langton v. Johnston,* 928 F.2d 1206, 1226 (1st Cir.1991) (assessing significance "given the scope and tenor of the litigation as a whole").[9] Appellants insist, nonetheless, that the final judgment cannot have had any significant effect on their legal relationship with Domegan, and question how a one dollar damage award can be considered other than *de minimis* success. Although one dollar most assuredly is a nominal amount, the final judgment nonetheless represented "some" of the benefit sought in the litigation; namely, an enforceable judgment against the defendant officials who deprived the plaintiff of the constitutional right to due process of law. We are unable to agree that an enforceable judgment for nominal damages redressing significant procedural due process violations cannot qualify the plaintiff for "prevailing party" status.[10]

---

erential review in *Langton v. Johnston,* 928 F.2d 1206, 1225 (1st Cir.1991) (district court assessment of causation and materiality elements in the "catalyst" test) (§ 1988 award). The only question in the present case is whether a judgment for one dollar in damages entitles Domegan to "prevailing party" status. The facts are not in dispute, *see Guglietti,* 900 F.2d at 399, and application of the "prevailing party" test presents a pure question of law warranting plenary review.

Moreover, as we have explained, the district court's discretion to deny a fee award to a "prevailing party" under section 1988 is narrowly circumscribed:

Despite the explicit grant of discretion in section 1988, it is well-established [sic] that a court *may not* deny an award of attorney's fees to a prevailing civil rights plaintiff in the absence of special circumstances rendering the award unjust, and this court requires findings of fact and conclusions of law identifying the special circumstances and explaining why an award would be inappropriate.

*de Jesus,* 918 F.2d at 234 (citations omitted) (emphasis added).

9. Appellants attempt to demonstrate the *de minimis* nature of Domegan's one dollar "compensatory" damage award on the procedural due process claim against three defendants by pointing out that he asserted 42 "defendant/counts" at the "height" of the litigation. The same sort of argument was made by the defendants in *Rogers v. Okin,* 821 F.2d 22 (1st Cir.1987), *cert. denied,* 484 U.S. 1010, 108 S.Ct. 709, 98 L.Ed.2d 660 (1988). In rejecting their contention, this court stated that the defendants had "adopted the kind of 'mathematical approach' criticized in [*Hensley v. Eckerhart,* 461 U.S. 424, 435–36 n. 11, 103 S.Ct. 1933, 1940 n. 11, 76 L.Ed.2d 40 (1983)]...." *Id.* at 25. Along the lines explained in *Rogers,* "prevailing party" success cannot be measured by an arithmetic comparison of the claims and defendants joined in the complaint with the number of claims and defendants named in the final judgment. *Id.* (rejecting defendants' attempt to minimize plaintiffs' success by claiming victory on "no fewer than 224" issues); *see Hensley,* 461 U.S. at 435–36 n. 11, 103 S.Ct. at 1940 n. 11 (mathematical comparison of the total number of issues in a case with those actually won "provides little aid in determining what is a reasonable fee in light of all the relevant factors"), *quoted in Rogers,* 821 F.2d at 25. Domegan's procedural due process claim doubtless represented a significant constitutional claim in qualitative terms. We cannot treat the quantitative dimensions of the relief obtained on the due process claim as dispositive of the allowability, *vel non,* of a § 1988 fee award, as distinguished from the reasonableness of the amount awarded. *Texas Teachers,* 489 U.S. at 790, 793, 109 S.Ct. at 1488 ("the degree of the plaintiff's overall success" goes to the reasonableness, not the allowability of the award); *Nadeau v. Helgemoe,* 581 F.2d 275, 281 (1st Cir.1978) (*some* fee award appropriate where success is but partially attributable to plaintiff's lawsuit).

10. Similarly, the Supreme Court has never intimated that a valid final judgment declaring a violation of a claimant's civil rights constituted "purely technical or *de minimis*" success simply because no compensatory damage award or injunctive relief was obtained. Rather, presumably in recognition of the fact that the wrong occasioned by a procedural due process violation often is not susceptible to monetary measurement, the Court has stated that plaintiffs who establish a procedural due process violation "nevertheless will be *entitled* to recover nominal damages not to exceed one dollar...." *Carey v. Piphus,* 435 U.S. 247, 267, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978) (emphasis added); *Maldonado Santiago v. Velazquez Garcia,* 821 F.2d 822, 829 (1st Cir.1987) (citing *Carey*). *See Memphis Community Sch. Dist. v. Stachura,* 477 U.S. 299, 308 n. 11, 106 S.Ct. 2537, n. 11, 91 L.Ed.2d 249 (1986) (Nominal damages "are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury"); *see also, e.g., Fassett by and through Fassett v. Haeckel,* 936 F.2d 118, 121 (2d Cir. 1991) (Fourth Amendment violation); *Floyd v. Laws,* 929 F.2d 1390, 1401–03 (9th Cir.1991) (violation of "constitutional rights"); *Cowans v.*

### a. Baseline Criteria

Prior to *Texas Teachers* at least, attorney fees were not withheld under section 1988 simply because the plaintiff merely obtained a nominal damage award. *Perez v. University of Puerto Rico*, 600 F.2d 1, 2 (1st Cir.1979) ("Fees may not be denied simply because only nominal damages are awarded."); *Ganey v. Edwards*, 759 F.2d 337, 339–40 (4th Cir.1985) (liability determination need not even be accompanied by nominal damage award); *Burt v. Abel*, 585 F.2d 613, 618 (4th Cir.1978) (nominal damage award sufficient); *Basiardanes v. City of Galveston*, 682 F.2d 1203, 1220 (5th Cir. 1982) (judgment for nominal damages may warrant fee award); *Skoda v. Fontani*, 646 F.2d 1193, 1194 (7th Cir.1981) (per curiam) ($1.00 judgment satisfies "prevailing party" requirement); *Hogue v. Clinton*, 791 F.2d 1318, 1323 (8th Cir.) (absent proof of actual injury, plaintiff should be granted nominal damages and attorney fees), *cert. denied*, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 704 (1986); *Scofield v. City of Hillsborough*, 862 F.2d 759, 766 (9th Cir. 1988) (attorney fees allowable solely on basis of nominal damage award); *see Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir.1986) (Title VII case citing *Nephew v. City of Aurora*, 766 F.2d 1464, 1466 (10th Cir.1985)), a § 1988 case subsequently reversed on other grounds, 830 F.2d 1547 (10th Cir.1987) (en banc); nominal damage award entitled plaintiff to attorney fees); *Garner v. Wal–Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir.1987) (Title VII case; nominal damage award confers "prevailing party" status). *But compare Huntley v. Community Sch. Bd.*, 579 F.2d 738, 742 (2d Cir.1978) (*district court* did not abuse discretion in determining that $100 damage award on procedural due process claim amounted, at most, to "moral victory")

*with Milwe v. Cavuoto*, 653 F.2d 80, 84 (2d Cir.1981) (nominal damage award on constitutional claim stemming from official misconduct "sufficient to support an award of fees") (alternate holding).

Much as the Fifth Circuit recently pointed out, however, in *Estate of Farrar v. Cain*, 941 F.2d 1311, 1317 (5th Cir.1991), *cert. granted sub nom. Farrar v. Hobby*, —— U.S. ——, 112 S.Ct. 1159, 117 L.Ed.2d 407 (1992), all of the cases cited above, except *Scofield*, antedate *Texas Teachers* as well as *Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), and *Rhodes v. Stewart*, 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (Per Curiam). Furthermore, the courts of appeals which have been presented with the issue in the wake of *Texas Teachers* have drifted apart.[11] *Compare Romberg v. Nichols*, 953 F.2d 1152, 1159 (9th Cir.1992) ("a nominal damages award does not a nominal victory make"); *Fassett by and through Fassett v. Haeckel*, 936 F.2d 118, 122 (2d Cir.1991) (fee award appropriate where nominal damages are recovered for deprivation of an absolute constitutional right) (citing *Ruggiero v. Krzeminski*, 928 F.2d 558, 564 (2d Cir.1991)) *with Estate of Farrar*, 941 F.2d at 1315–17 (nominal damage award represents *de minimis* success where *sole* purpose of lawsuit was recovery of damages); *Spencer v. General Electric Co.*, 894 F.2d 651, 662 (4th Cir.1990) (dicta) (indicating that $1.00 judgment might constitute *de minimis* success absent any other favorable litigation result); *Denny v. Hinton*, 131 F.R.D. 659, 662–63 (M.D.N.C.1990) (nominal damage award constitutes *de minimis* success), *aff'd mem., Denny v. Elliott*, 937 F.2d 602 (4th Cir.1991), *and Lawrence v. Hinton*, 937 F.2d 603 (4th Cir.1991). *See also Brewer v. Chauvin*, 938 F.2d 860, 864 (8th Cir.1991)

---

*Wyrick*, 862 F.2d 697, 699, 700 (8th Cir.1988) (Eighth Amendment violation); *Farrar v. Cain*, 756 F.2d 1148, 1152 (5th Cir.1985) (violation of "civil rights"); *Kincaid v. Rusk*, 670 F.2d 737, 746 (7th Cir.1982) (violation of due process and First Amendment); *McGhee v. Draper*, 639 F.2d 639, 646 (10th Cir.1981) (due process violation). *But cf. Ganey v. Edwards*, 759 F.2d 337, 339 (4th Cir.1985) (award of nominal damages left to jury).

11. The Fourth and Fifth Circuits have concluded, contrary to their pre-*Texas Teachers* precedent, that a nominal damage award alone cannot confer "prevailing party" status. *See Denny v. Hinton*, 131 F.R.D. 659, 662–63 (M.D.N.C. 1990), *aff'd mem., Denny v. Elliott*, 937 F.2d 602 (4th Cir.), *and aff'd. mem. Lawrence v. Hinton*, 937 F.2d 603 (4th Cir.1991); *Estate of Farrar*, 941 F.2d at 1315 (where *sole* purpose of lawsuit was to recover damages).

(citing *Hogue v. Clinton*, 791 F.2d 1318 (8th Cir.1986)).

As *Texas Teachers* explains, in order for a claimant to qualify for "prevailing party" status the litigation must achieve, at a minimum, a "material alteration" in the legal relationship between the parties. *Texas Teachers*, 489 U.S. at 792, 109 S.Ct. at 1493. The Court in *Texas Teachers* limned its "material alteration" standard, in broad outline, through reference to two earlier cases, *see id.* (discussing *Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), and *Rhodes v. Stewart*, 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (Per Curiam)), to which we now turn.

In *Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), a prison inmate commenced a section 1983 action for damages, as well as declaratory and injunctive relief, alleging due process violations by prison officials. Helms was released on parole prior to any decision by the district court, and the district court later entered summary judgment *against* Helms. The Third Circuit reversed on the ground that Helms had been denied due process. The court of appeals ordered the case remanded for entry of judgment in favor of Helms, except as to any defendant determined entitled to qualified immunity. Prior to the actual remand to the district court, however, the defendant prison officials secured a favorable Supreme Court decision dismissing one of Helms' claims. After remand from the Supreme Court, the Third Circuit reaffirmed its earlier holding on the other due process claim and again remanded to the district court on the issue of qualified immunity. On remand, Helms did not pursue injunctive relief. The district court once again entered summary judgment against Helms, on the ground that the defendants were immune from liability for damages, and denied a fee award under section 1988. The Third Circuit again reversed, on the ground that its earli-er interlocutory ruling that Helms' due process rights had been violated constituted significant success.

The Supreme Court disagreed. Justice Scalia pointed out that Helms had obtained no relief whatever on any claim in litigation—no judgment, no damages, no injunctive relief, and no declaratory relief. "The most that he obtained was an *interlocutory* ruling that his complaint should not have been dismissed for failure to state a constitutional claim." *Hewitt*, 482 U.S. at 760, 107 S.Ct. at 2675 (emphasis added). The Supreme Court refused to equate the Third Circuit ruling with declaratory relief, since the interlocutory ruling *could not* conceivably alter the legal relationship between the parties[12] in the face of a final judgment *"against the plaintiff ...,"* id. at 763, 107 S.Ct. at 2677 (emphasis added), and the litigation resulted in no other "relief" which *"affect[ed] the behavior of the defendant[s] towards the plaintiff,"* id. at 761, 107 S.Ct. at 2676 (emphasis in original).

We are not persuaded that *Hewitt* can be considered analogous authority for withholding "prevailing party" status on the ground that a final judgment for nominal damages is no different than the Third Circuit interlocutory ruling declaring a violation of Helms' due process rights. Moreover, as the Court clearly explained in *Hewitt*:

Respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail. *See Hanrahan v. Hampton*, 446 U.S. 754, 757 [,100 S.Ct. 1987, 1989, 64 L.Ed.2d 670] (1980). Helms obtained no relief. Because of the defendants' official immunity he received no damages award. No injunction or declaratory judgment was entered in his favor. Nor did Helms obtain relief without benefit of a formal judgment—for example, through a consent decree or

---

12. It is to this same discussion in *Hewitt*, 482 U.S. at 760–61, 107 S.Ct. at 2676, that the Court cites in *Texas Teachers*, 489 U.S. at 792, 109 S.Ct. at 1493, to explicate its threshold standard for "prevailing party" status under 42 U.S.C. § 1988. We consider it no happenstance that

*Texas Teachers* and *Hewitt* both cite to *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (Per Curiam), and its seminal discussion of the threshold test for "prevailing party" status. *See infra* at note 13.

settlement. *See Maher v. Gagne,* 448 U.S. 122, 129 [,100 S.Ct. 2570, 2575, 65 L.Ed.2d 653] (1980). The most that he obtained was an interlocutory ruling that his complaint should not have been dismissed for failure to state a constitutional claim. That is not the stuff of which legal victories are made. *Cf. Hanrahan, supra,* [446 U.S.] at 758–59 [100 S.Ct. at 1990].

482 U.S. at 760, 107 S.Ct. at 2675–76.[13]

The Fifth Circuit recently vacated a section 1988 fee award to plaintiffs whose only relief on the merits of their claims was a judgment for nominal damages, stressing "the principles set forth in [*Hewitt*] and applied in *Rhodes* [*v. Stewart*]...." *Estate of Farrar v. Cain,* 941 F.2d at 1311, 1317 (5th Cir.1991), *cert. granted sub nom., Farrar v. Hobby,* —— U.S. ——, 112 S.Ct. 1159, 117 L.Ed.2d 407 (1992). With respect, and recognizing the closeness of the question, we would ascribe a somewhat different intendment to the principles enunciated in *Hewitt* and applied in *Rhodes;* that is, as not precluding "prevailing party" status for the claimant who obtains sufficient relief to effect a material alteration in the legal relationship out of which the claim for relief arose. In other words, we think the principles enunciated in *Hewitt* portend no significant departure from earlier Supreme Court criteria for determining "prevailing party" status on the part of a plaintiff who obtains an enforceable judgment for nominal damages on a significant constitutional claim.[14]

---

**13.** In *Hanrahan,* 446 U.S. at 756–57, 100 S.Ct. at 1989, the Supreme Court reversed a § 1988 fee award made *pendente lite* to appellate counsel, on the ground that all rulings favorable to the plaintiffs were interlocutory and procedural. The Court noted that—

> it seems clearly to have been the intent of Congress to permit such an interlocutory award only to a party who has *established his entitlement to some relief on the merits of his claims,* either in the trial court or on appeal. The congressional Committee Reports described what were considered to be appropriate circumstances for such an award by reference to two cases—*Bradley v. Richmond School Board,* 416 U.S. 696 [94 S.Ct. 2006, 40 L.Ed.2d 476] (1974), and *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375 [90 S.Ct. 616, 24 L.Ed.2d 593] (1970). S.Rep. No. 94–1011, [p.] 5 [(1976)]; H.R.Rep. No. 94–1558, [p.] 8 [(1976)]. In each of those cases the party to whom fees were awarded had established *the liability of the opposing party,* although final *remedial* orders had not been entered.

*Id.* 446 U.S. at 757, 100 S.Ct. at 1989 (emphasis added). *Texas Teachers,* 489 U.S. at 790–92, 109 S.Ct. at 1492–93, reaffirms this essential element of the "prevailing party" test, which was discussed not only in *Hanrahan,* 446 U.S. at 757, 100 S.Ct. at 1989, but in *Hewitt,* 482 U.S. at 760, 107 S.Ct. at 2675, as well.

Furthermore, as *Hanrahan* indicates, in *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the Court deemed an interim fee award appropriate once *liability* had been determined, even though "the question of relief [would] await further proceedings....;" that is, even though no order directing relief had yet been granted. It is particularly noteworthy, we believe, that *Mills* is cited with approval in the companion Senate Report accompanying § 1988, as well as in the House Report, since the latest Supreme Court pronouncement on the subject states that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties *in a manner which Congress sought to promote in the fee statute.*" *Texas Teachers,* 489 U.S. at 793, 109 S.Ct. at 1493 (emphasis added). Of course, the *Hewitt* citation to *Hanrahan* illuminates the reason Helms could not *possibly* have been granted "prevailing party" status, since he *never* established *entitlement* to any relief.

Finally, the Supreme Court observed in *Hanrahan:*

> It seems apparent from these passages that Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims. For only in that event has there been a *determination* of the 'substantial rights of the parties,' which Congress determined was a necessary foundation for departing from the usual rule in this country that each party is to bear the expense of his own attorney.

*Hanrahan,* 446 U.S. at 757–58, 100 S.Ct. at 1989 (emphasis added) (quoting H.R. No. 94–1558, p. 8 (1976)).

**14.** Prior to *Hewitt,* the Court held that *"liability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity* or on the merits, § 1988 does not authorize a fee award against that defendant." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985) (emphasis added). *See also Supreme Court of Virginia v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 738–39, 100 S.Ct. 1967, 1978, 64 L.Ed.2d 641 (1980) (overturning § 1988 fee award premised on conduct for which defendants possessed absolute legislative immunity).

The other Supreme Court case discussed in *Texas Teachers* is *Rhodes v. Stewart*, 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (Per Curiam), a section 1983 action in which two prison inmates obtained a judgment declaring that their First and Fourteenth Amendment rights had been violated by prison officials who failed to comply with prison administrative procedures regulating magazine subscriptions by inmates. The district court judgment ordered compliance and awarded attorney fees. The Sixth Circuit affirmed the section 1988 fee award. The Supreme Court reversed, observing that *"[t]he case was moot before judgment issued, and the judgment therefore afforded* the plaintiffs *no relief whatsoever* [,]" *id.* at 4, 109 S.Ct. at 203–04 (emphasis added), since one plaintiff-inmate died and the other was released from custody prior to judgment. Whatever relief other inmates might realize from the judgment,[15] the plaintiffs, as *former* inmates, realized no relief and, therefore, were not entitled to "prevailing party" status. *Id.* Thus, we think *Rhodes* signifies no different result in the present context than would have been required under its predecessor, *Hewitt.*

At this point in our analysis, as we see it, the baseline standard for "prevailing party" status set out in *Texas Teachers* has been met. Domegan obtained an enforceable final judgment affording at least some relief against the defendant corrections officials who violated his procedural due process rights.[16] Furthermore, we consider the nominal damage award not only "some relief on the merits" of a significant constitutional claim, *see Texas Teachers,* 489 U.S. at 792, 109 S.Ct. at 1493 (quoting *Hewitt,* 482 U.S. at 760, 107 S.Ct. at 2675),[17] but relief commensurate with the intrinsically-nonpecuniary procedural due process deprivation established in litigation.[18]

**15.** In the instant case, notwithstanding that the challenged AFP procedures were revised within three months after the filing of the *pro se* complaint, Domegan does not contend that an informal alteration in the parties' legal relationship was occasioned by the litigation. *See Nadeau,* 581 F.2d at 281 ("We ... consider the chronological sequence of events to be an important, although clearly not definitive factor, in determining whether or not defendant can be reasonably inferred to have guided his actions in response to plaintiff's lawsuit."); *see also Langton,* 928 F.2d at 1225 ("'the mere existence of a temporal coincidence ... cannot alone suffice' to engage the gears of the catalyst test.") (quoting *Martinez v. Rhode Island Housing & Mortgage Finance Corp.,* 628 F.Supp. 996, 1001 (D.R.I.1986)).

**16.** We recognize, of course, that one dollar is a nominal amount. Yet we cannot think that a nominal damage award does not represent "some relief," particularly where the significance of the constitutional claim and the nature of the established deprivation are not susceptible to monetary measurement. Thus, we believe we must recognize that the nominal damage award does not warrant an inference that the fact-finder intended to minimize the seriousness of the wrong done, or the substantiality of the relief intended, since the intangible nature of the absolute constitutional injury in the instant case is not measurable in monetary terms.

**17.** *Cf. Walker v. Anderson Elec. Connectors,* 944 F.2d 841, 843 n. 4 & 845–47 (11th Cir.1991) (upholding denial of fee award where Title VII jury found that defendant's sexual harassment had not been the proximate cause of any lost work, thereby precluding even a nominal damage award; where court stated that "an award of nominal damages ... would make the prospect of obtaining attorney fees much easier...."), *petition for cert. filed,* 60 U.S.L.W. 3800 (U.S. May 8, 1992) (No. 91–1794); *Warren v. Fanning,* 950 F.2d 1370, 1375 (8th Cir.1991) (where money damages alone were requested, and jury found Eighth Amendment violation, plaintiff "and his counsel ... have no one to blame but themselves for the jury's decision not to award nominal damages," since they proposed a jury instruction which left any nominal damage award to the discretion of the jury, even though applicable law mandated nominal damage award).

**18.** Appellants emphasize that Domegan could not have obtained injunctive or declaratory relief at the time judgment was entered, because the AFP had been revised in 1983 and Domegan had been released from state custody in 1988. Accordingly, relying on *Hewitt* and *Rhodes,* and the Fifth Circuit's interpretation of those cases in *Estate of Farrar,* appellants argue that the judgment in no way affected their *behavior* toward Domegan. Unlike the plaintiffs in *Hewitt* and *Rhodes,* however, Domegan obtained an enforceable judgment for nominal damages redressing appellants' previous violations of Domegan's constitutional rights.

We are satisfied that the intendment appellants attribute to the threshold "prevailing party" standard set out in *Texas Teachers* would work results sufficiently foreign to the develop-

### b. *Purely Technical or de minimis Success*

Notwithstanding the majority view prevailing among the courts of appeals—allowing section 1988 attorney fee awards based on an enforceable judgment for nominal damages—*see supra* at pp. 407–408, the residual "prevailing party" standard recently enunciated by a unanimous Court in *Texas Teachers* concededly gives us pause. The opinion cautioned that a *district court* might conclude that a civil rights claimant was not eligible for "prevailing party" status if the "success [achieved] on a legal claim can be characterized as purely technical or *de minimis....*" *Texas Teachers*, 489 U.S. at 792, 109 S.Ct. at 1493. Under the *de minimis* success standard, therefore, we must determine whether an enforceable judgment awarding nominal damages on a procedural due process claim can effect a sufficiently *material* alteration in the parties' legal relationship to entitle the claimant to "prevailing party" status.

First, we examine the illustration of "purely technical or *de minimis* success" taken from the *Texas Teachers* case itself, where the plaintiff teachers' organizations successfully challenged a school policy forbidding teacher meetings during non-school hours absent prior approval from the school principal. The Court hypothesized that plaintiffs would not have qualified for "prevailing party" status on this basis alone, as "[t]he District Court [had] characterized this issue as 'of minor significance' and noted that there was *'no evidence that the plaintiffs were ever refused permission to use school premises during non-school hours.'*" *Texas Teachers*, 489 U.S. at 792, 109 S.Ct. at 1493 (quoting App. to Pet. for Cert. 60a n. 26) (emphasis added). Since there was no evidence that the particular school policy ever had been, or would be, applied, their successful challenge did not avail plaintiffs of sufficient "relief" to

effect a "material alteration in the legal relationship between the parties." *Compare Rhodes*, 488 U.S. at 4, 109 S.Ct. at 203.

We interpret the *Texas Teachers* hypothetical to require some justiciable past, present or impending civil rights deprivation entitling the claimant to relief. Moreover, no matter how comprehensive the "relief" obtained by the claimant, unless the wrong occasioned or threatened by the challenged procedure is "significant" the alteration effected in the overall legal relationship out of which the claim arose will be considered too insubstantial to satisfy the "prevailing party" test. Thus, the success achieved may be ruled purely technical or *de minimis* if the civil rights violation is either too abstract or too remote in prospect for the "relief" obtained in litigation to have effected a material alteration in the relevant legal relationship between the parties.

The second illustration of "technical or *de minimis* success" is found in *Naprstek v. City of Norwich*, 433 F.Supp. 1369 (N.D.N.Y.1977). *See Texas Teachers*, 489 U.S. at 792, 109 S.Ct. at 1493. Some years ago, *Nadeau v. Helgemoe*, 581 F.2d 275, 279 n. 3 (1st Cir.1978) (Coffin, C.J.), cited *Naprstek* as a case in which fee shifting would have been inappropriate since "the *grounds* for attacking an antiquated and rarely enforced curfew statute [were found] to be 'more contrived than real.'" *Id.* (quoting *Naprstek*, 433 F.Supp. at 1370) (emphasis added). The Supreme Court in *Texas Teachers* essentially identified *Naprstek* as an example of a purely "technical" victory that neither prevented any significant risk of prospective wrongdoing nor vindicated any genuine previous or contemporaneous wrong.

These exemplars imply qualitative criteria for determining "technical or *de minimis*" success, requiring careful analysis of the materiality of the relief obtained in

---

ing appellate caselaw under section 1988 as to make its *sub silentio* adoption by the Supreme Court extremely improbable. Thus, we do not interpret *Texas Teachers* or its precursors as *requiring* a material alteration in the *future* legal relationship between the parties. In circum-

stances where the wrong occasioned the claimant is nonpecuniary in nature, we think an award of nominal damages can alter the *legal relationship* out of which the dispute arose as significantly as a large monetary award can compensate for pecuniary injury.

litigation to the wrong occasioned the claimant. If the wrong "redressed" was illusory or contrived, even comprehensive "relief" may amount to mere technical or *de minimis* success.

The third exemplar cited in *Texas Teachers* is *New York City Unemployed and Welfare Council v. Brezenoff*, 742 F.2d 718, 724 n. 4 (2d Cir.1984) [hereinafter *Brezenoff II*], where the district court denied a section 1988 award because plaintiffs' success was considered purely technical or *de minimis*. In *Brezenoff II*, the constitutional violations alleged in the complaint were compared with the relief obtained in litigation.[19] The plaintiff organization and some of its members launched a broadside against the regulatory framework through which the defendant agency allegedly fettered access to government buildings and restricted organizational activities inside government buildings.[20] Ultimately, the only relief the plaintiffs obtained was an order requiring that at least one representative be permitted to move freely about the designated IMC reception area. A comparative analysis of the unconstitutional action and the relief obtained demonstrates that the lawsuit effected no *material* alteration in the relevant legal relationship out of which the litigation

arose. The remedial alteration in the legal relationship between the parties amounted to a nick in the agency's regulatory armor. Neither the fabric nor the design of the regulatory framework was altered by the ruling—hardly an indictment of agency overdrafting—that one member of each organization must be allowed to walk about the reception area. Thus, the Court's citation to *Brezenoff II* illustrates that the success achieved may be considered technical or *de minimis* if the relief effected too insubstantial an alteration in the overall legal relationship out of which the litigation arose.

The fourth exemplar offered in *Texas Teachers* provides similar guidance. In *Chicano Police Officers Ass'n v. Stover*, 624 F.2d 127, 131 (10th Cir.1980), the Tenth Circuit ruled that nuisance settlements do not represent "relief" of the sort required for "prevailing party" status. Its instruction is not unlike that found in a seminal First Circuit case. *See Nadeau*, 581 F.2d at 281 (action must not have been "frivolous, unreasonable, or groundless"). Furthermore, it is in the nature of nuisance settlements that the benefits tendered in settlement have less to do with the intrinsic merit of the claim than with the cost of defending against it.[21]

**19.** Although ostensibly *Brezenoff II* compared the wrongs *alleged* with the relief obtained, the net effect of its analysis, as in the *Texas Teachers* hypothetical and *Naprstek*, correctly resulted in a qualitative comparison between the demonstrated wrong and the relief obtained. We submit that the "degree of success" achieved, which goes to the *amount* of the fee award, *Texas Teachers*, 489 U.S. at 790, 793, 109 S.Ct. at 1493; *Nadeau*, 581 F.2d at 281, is to be strictly distinguished from the *quality* of the relief obtained in relation to the nature and significance of the *established* wrongdoing, which goes to the entitlement to a fee award *vel non*.

**20.** The complaint charged that four regulations promulgated by the New York City Human Resources Administration infringed the constitutional rights of the plaintiff organization's members "to converse with, distribute leaflets to, and collect contributions from welfare recipients and applicants on the premise of the City's Income Maintenance Centers ('IMCs')." *New York City Unemployed and Welfare Council v. Brezenoff*, 677 F.2d 232, 234 (2d Cir.1982) [*Brezenoff I*]. Plaintiffs failed to demonstrate the unconstitutionality of the challenged regulations narrowly confining organization activities to the

first-floor reception areas of the IMCs, requiring a one-day notice of intent to utilize the IMC distribution tables, and banning solicitation of membership fees and contributions inside the IMCs. Instead, a minor provision in one of the four challenged regulations was ruled unduly restrictive; that is to say, insofar as it required all representatives of the plaintiff organization to *remain at* the IMC tables.

**21.** On the other hand, a conventional settlement of a significant claim may entitle the claimant to "prevailing party" status even in the absence of a final judgment. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980). *See Forrest v. New York City Criminal Justice Agency*, 549 F.Supp. 211, 213 (S.D.N.Y. 1982) (rejecting defendant's "nuisance settlement" defense to plaintiff's claim for a § 1988 attorney fee award: "Both the amount and the timing of the settlement make clear that it was not a means employed by defendants to be free of *a frivolous claim*.") (emphasis added); *see also Ashley v. Atlantic Richfield Co.*, 794 F.2d 128, 134 & n. 9 (3d Cir.1986) ("nuisance settlement" inquiry not to be undertaken as part of "prevailing party" determination, but as part of

The next guidepost in *Texas Teachers* is its admonition that the "degree of success" achieved in litigation goes to the reasonableness of the *amount* of the award and "not to the availability of a fee award *vel non*," *Texas Teachers*, 489 U.S. at 793, 109 S.Ct. at 1493; *id.* at 790, 109 S.Ct. at 1492; that is, not to the "prevailing party" determination. *Texas Teachers* clearly considers "degree of success" a *non* qualitative criterion relating exclusively to the amount of an award, rather than its availability.

Thus, *Texas Teachers* and its precursors are not prologue to the quantitative "prevailing party" test advocated by appellants. Instead, differences in the degree of success achieved are reflected in the *amount* awarded; whereas differences in kind, as suggested by the Court's articulation of the residual *de minimis* success standard ("significance," "materiality"), require qualitative assessments pertaining principally to the claimant's eligibility for a fee award. Throughout its discussion in *Texas Teachers*, and particularly its references to the "degree of success" achieved in litigation, *see id.* at 790, 793, 109 S.Ct. at 1492, 1493, the Court appears to intend a quantitative assessment of the claimant's success only in relation to the reasonableness of the amount of the fee awarded a "prevailing party."

The "prevailing party" criteria endorsed in *Texas Teachers* inquire whether the plaintiff (i) obtained relief on a *significant* claim in litigation, (ii) effecting a *material* alteration in the parties' legal relationship, (iii) that is not merely technical or *de minimis* in nature. *See Texas Teachers*, 489 U.S. at 791–93, 109 S.Ct. at 1492–93 (emphasis added). Whereas the "degree of success" achieved in litigation may affect the *amount* awarded, the third criterion for "prevailing party" status superimposes a residual limitary standard on its companion criteria designed to ensure that *entitlement* to an award will depend on the *qualitative* significance of the *relief* obtained, in terms of its *materiality* to the legal relationship which occasioned the unconstitutional action.[22]

Domegan obtained a final judgment for damages on a significant constitutional claim. *See Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978) (as procedural due process is an "absolute" right, its denial is actionable without proof of actual injury, because of "the importance to organized society that procedural due process be observed").[23] Although the monetary damage award is minuscule in amount, in the eyes of the law its remedial significance is substantial, as society recognizes the intrinsic deterrent effect in judgments against public officials who violate procedural due process rights guaranteed under the Constitution. *See id.* & *infra* note 32; *see also Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 308 n. 11, 106 S.Ct. 2537, 2544 n. 11, 91 L.Ed.2d 249 (1986) (stating: *Carey* "makes clear that nominal damages ... are the

"special circumstances" determination, and stating that "the focus should be on the lack of merit in the plaintiff's case"). *Cf. Dowling v. Narragansett Capital Corp.*, 735 F.Supp. 1105, 1111 (D.R.I.1990) (stating that one of the purposes behind Fed.R.Civ.P. 9(b), particularly in the context of securities litigation, is to "deter *groundless claims* that are asserted solely for tactical reasons or for purposes of *extracting nuisance settlements*") (emphasis added).

22. In *Brezenoff II*, for example, the decree derailing the "walk-about" restriction afforded relief that effected a purely technical alteration in the legal relationship that gave rise to the claims in litigation. The hypothetically-limited relief discussed in *Texas Teachers* brought no relief, since the requirement of permission to use school premises during non-school hours was never actuated or threatened. Similarly, the

putative risk of injury in *Naprstek* was "'more contrived than real[,]'" *Nadeau*, 581 F.2d at 279 n. 3, and in *Stover* the nuisance settlement lacked the required nexus to a significant claim.

23. *Carey*, 435 U.S. at 266, 98 S.Ct. at 1054, has never been limited in any Supreme Court case arising under section 1988. *See City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986) (plurality op.) ("reasonable fee" case, citing to *Carey*'s "nominal damages" discussion in support of *Rivera* view that "a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms."); *id.* at 594, 106 S.Ct. at 2704 (Rehnquist, J., dissenting) (distinguishing *Rivera* case from "a case such as [*Carey*], in which the deprivation of a constitutional right necessarily results in only nominal pecuniary damages.").

appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury."). Thus, in these circumstances, the final judgment awarding nominal damages for violations of the inmate-plaintiff's absolute constitutional right to procedural due process cannot be characterized, in any legitimate qualitative sense, as "purely technical or *de minimis* success." Furthermore, since the procedural due process deprivation in the present case is not amenable to monetary reparation, a quantitative assessment of the relief obtained in litigation would defeat the congressional intent underlying the principles governing fee shifting in civil rights cases.

The Supreme Court made it abundantly clear in *Texas Teachers* that the ultimate monitor for the "prevailing party" test is congressional intent. Congress avowedly designed section 1988 to enable private citizens to vindicate civil rights violations in circumstances where the unlikelihood of significant financial recoveries would deter their remediation due to the otherwise unaffordable litigation costs.

If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.

. . . .

. . . [F]ee awards are essential if the Federal statutes to which [§ 1988] applies are to be fully enforced. We find that the effects of such fee awards are ancillary and incident to securing compliance with these laws, and that fee awards are an integral part of the reme-

dies necessary to obtain such compliance. . . .

It is intended that the amount of fees awarded under [§ 1988] . . . not be reduced because the rights involved may be nonpecuniary in nature. . . .

. . . If the cost of private enforcement actions becomes too great, there will be no private enforcement. If our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases.

S.Rep. No. 1011, 94th Cong., 2d Sess. 2, 5, 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910, 5913. *See also Furtado v. Bishop*, 635 F.2d 915, 919 (1st Cir.1980) (emphasizing that § 1988 is meant to finance litigation in cases which apply (rather than create) legal rules, and stating that "pathbreaking holdings that will not be enforced are of limited public value," adding that "the 'principle' of enforcement *is* served by suits that 'merely' seek damages." (emphasis in original)).

Especially significant in the circumstances of the instant case is Congress' explicit pronouncement that "the amount of fees awarded under [§ 1988] . . . not be reduced because the rights involved may be nonpecuniary in nature." S.Rep. No. 1011, at 6, *reprinted in* 1976 U.S.C.C.A.N. at 5913. As the Supreme Court similarly observed, "Congress enacted § 1988 specifically to enable plaintiffs to enforce the civil rights laws even where the amount of damages at stake would not otherwise make it feasible for them to do so. . . ." *City of Riverside v. Rivera*, 477 U.S. 561, 577, 106 S.Ct. 2686, 2696, 91 L.Ed.2d 466 (1986) (plurality op.).[24]

---

**24.** Four years before Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976 (the "Act"), this court reversed a district court order denying a fee award to a successful § 1982 claimant. The reversal was predicated on public policy considerations which were explained as follows:

The violation of an important public policy may involve little by way of actual damages, so far as a single individual is concerned, or little in comparison with the cost of vindication, as the case at bar illustrates. If a defendant may feel that the cost of litigation, and,

particularly, that the financial circumstances of an injured party may mean that the chances of suit being brought, or continued in the face of opposition, will be small, there will be little brake upon deliberate wrongdoing. *Knight v. Auciello*, 453 F.2d 852, 853 (1st Cir. 1972) (per curiam).

These very words were quoted four years later on the floor of the United States Senate by the sponsor of the Senate bill subsequently enacted into law as the Act. 122 Cong.Rec. 33, 313–14 (1976) (remarks of Sen. Tunney); *see* 122 Cong.Rec. 33,314 (1976) (remarks of

Unless private citizens are to be denied "the opportunity to recover what it costs them to vindicate [their civil] rights in court," S.Rep. No. 1011, at 2, *reprinted in* 1976 U.S.C.C.A.N. at 5910, contrary to the explicit intent of Congress and the instruction in *Texas Teachers*,[25] an enforceable final judgment on a significant constitutional claim which materially alters the rights and responsibilities of the parties to the legal relationship in which the claim arose cannot be deemed "purely technical or *de minimis*" success simply because it vindicates a nonpecuniary deprivation. As we are persuaded that the nominal damage award effected a "material alteration of the legal relationship of the parties *in a manner which Congress sought to promote in the fee statute*," *Texas Teachers*, 489 U.S. at 792–93, 109 S.Ct. at 1493 (emphasis added), it cannot be deemed "purely technical or *de minimis*" success simply because the plaintiff sustained no injury of the sort traditionally considered amenable to compensatory damages.

> Sen. Kennedy ("[C]ivil rights cases—unlike tort or antitrust cases—do not provide the prevailing plaintiff with a large recovery from which he can pay his lawyer."), *quoted in Rivera*, 477 U.S. at 577, 106 S.Ct. at 2696 (plurality op.); *see also* H.R.Rep. No. 1558, 94th Cong., 2d Sess. 9 (1976) (noting importance of fee awards in protecting civil and constitutional rights, given "immunity doctrines and special defenses" which "preclude or severely limit" availability of damages), *reprinted in* Subcomm. on Constitutional Rights, Senate Comm. on the Judiciary, 94th Cong., 2d Sess., Civil Rights Attorney's Fees Awards Act of 1976: Source Book: Legislative History, Texts, and Other Documents 217 (Comm. Print 1976) [hereinafter *Source Book*].

**25.** Throughout the legislative history of the Act, Congress recognized the need to protect civil rights claimants whose financial circumstances would foreclose litigation aimed at vindicating deprivations of important nonpecuniary rights. S.Rep. No. 1011, at 2, *reprinted in* 1976 U.S.C.C.A.N. at 5910 ("In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights ... then [they] must have the opportunity to recover what it costs them to vindicate these rights in court."); H.R.Rep. No. 1558, at 1, *reprinted in*

### c. "Sole Object" Test

Appellants vigorously urge, however, that no fee award should have been allowed, as Domegan did not sue for nominal damages but for substantial compensatory and punitive damages. Relying on *Estate of Farrar v. Cain*, 941 F.2d 1311 (5th Cir. 1991), *cert. granted sub nom. Farrar v. Hobby*, —— U.S. ——, 112 S.Ct. 1159, 117 L.Ed.2d 407 (1992), appellants argue that Domegan's inability to establish an entitlement to compensatory or punitive damages required a determination that the nominal damage award represented *de minimis* success.

Appellants' contention runs counter to the formulation in *Texas Teachers*, 489 U.S. at 792–93, 109 S.Ct. at 1493, which precludes consideration of the "degree of success" in connection with the "prevailing party" test. *de Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 234 (1st Cir. 1990) (rejecting defendant's attempt to limit "prevailing party" status to plaintiffs "whose damage awards closely approximate the sums sought").[26] In *Estate of*

> *Source Book* 209 (recognizing that it is important that "the judicial remedy [be] full and complete," and stating, "[b]ecause a vast majority of the victims of civil rights violations cannot afford legal counsel, they are unable to present their cases to the courts."); *Rivera*, 477 U.S. at 577, 106 S.Ct. at 576 (plurality op.) (quoting floor debate remarks by members of Congress). The remarks of Rep. Hamilton Fish are particularly noteworthy in the present context:
>
>> Without the provision of attorney's fees, it would be very difficult to bring cases such as the following:
>>
>> . . . .
>>
>> Fourth. Suits under [42 U.S.C. § 1983 et al.] by inmates of a penitentiary alleging violations of the inmates' rights under the 1st, 8th, 13th, and 14th amendments.
>
> 122 Cong.Rec. 35,126 (1976) (remarks of Rep. Fish).

**26.** We fail to see how a material alteration of a legal relationship is made "non-material" through reference to relief not obtained. The corollary—that a non-material alteration does not become material merely because it represents the full relief sought—was recognized in *Waterman S.S. Corp. v. Maritime Subsidy Bd.*, 901 F.2d 1119 (D.C.Cir.1990) (EAJA case), where the plaintiffs were deemed prevailing parties on the basis of a district court order remanding their case to the administrative agency. The Court of Appeals for the District of Columbia

*Farrar*, 941 F.2d 1311, the Fifth Circuit did *not* conclude and, we submit, could not have concluded, in light of *Carey* and the congressional intent underlying section 1988, that a nominal damage award invariably constitutes *de minimis* success. Rather, the court held: "when the *sole* object of a suit is to recover money damages, the recovery of one dollar is no victory under § 1988." *Estate of Farrar*, 941 F.2d at 1315 (emphasis added) ("This was no struggle over constitutional principles. It was a damage suit and surely so since plaintiffs sought nothing more.").[27]

Respectfully, we are unable to agree that a *bona fide* civil rights action converts to a mere "damage suit" simply by an adjustment to the *ad damnum*, particularly where the claim can (but need not) be brought only for nominal damages based on an alleged deprivation of an "absolute" constitutional right. *See Carey*, 435 U.S. at 266, 98 S.Ct. at 1053–54; *see also Stachura*, 477 U.S. at 308 n. 11, 106 S.Ct. at 2544 n. 11. The present cause of action

Circuit reversed on the ground that the order of remand afforded no relief on the merits. The court rejected the contention that a bare remand constitutes some of the benefit sought by a plaintiff whose main purpose in bringing suit was to secure a remand:

To the extent [it is] argue[d] that the concept of benefit should be proportional to what is sought, we disagree.... It would seem absurd to grant fees to [ ] a party [seeking only a remand], while denying them to a party that differs only in that it asked for a more complete victory ... and lost on that.... Proportionality would come in only after an adequate victory is found and the court considers what share of the fees is reimbursable.

*Waterman S.S. Corp.*, 901 F.2d at 1123; *see also Gillespie v. Brewer*, 602 F.Supp. 218, 223 (N.D.W.Va.1985) ("The nature or importance of an action does not vary in proportion to the amount of monetary relief requested.").

Had Domegan sought only nominal damages on his procedural due process claim, there would be no question, under our analysis, that the comprehensive relief obtained through the nominal damage award would be sufficient for "prevailing party" status. *Compare Waterman S.S. Corp.*, 901 F.2d at 1123. That Domegan may have sought compensatory damages, *but see infra* nn. 28 & 30, would not detract from such a "prevailing party" finding. Of course, as we have stated, adjustment in the *amount* of the fee award *may* be appropriate in certain circumstances in response to a great disparity between the damages sought and recovered. *See,*

arose under the United States Constitution and was not converted into a mere tort claim for damages simply because Domegan demanded compensatory relief.[28] *See also Blanchard v. Bergeron*, 489 U.S. 87, 96, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989) (rejecting "the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefiting only the individual plaintiffs whose rights were violated") (quoting *Rivera*, 477 U.S. at 574, 106 S.Ct. at 2694 (plurality op.)).

■ Domegan did not deny culpability for the disciplinary charges which led to the AFP placement. Instead, he claimed that he was wrongfully placed and kept on the AFP without procedural due process. Accordingly, even if *de facto* isolation and an inadequate diet had caused provable injury amenable to monetary compensation, Domegan could not have established an entitlement to compensation for the substantive deprivation.[29] *See Carey*, 435 U.S.

*e.g., Foley v. City of Lowell*, 948 F.2d 10, 19–20 (1st Cir.1991).

**27.** The Supreme Court rejected the Fifth Circuit's "central issue" test in *Texas Teachers*, 489 U.S. at 791, 109 S.Ct. at 1492. In *Estate of Farrar*, 941 F.2d at 1315, the court formulated its "sole object" test.

**28.** We note also that Domegan initially sought declaratory and injunctive relief but properly refrained from pursuing those claims following his release from state custody. *Cf., e.g., Rhodes*, 488 U.S. at 4, 109 S.Ct. at 203 (former inmates not "prevailing parties," as case became moot before entry of judgment for equitable relief); *Preiser v. Newkirk*, 422 U.S. 395, 402–03, 95 S.Ct. 2330, 2335, 45 L.Ed.2d 272 (1975) (inmate's action for equitable relief from wrongful transfer was mooted by retransfer of inmate after filing of complaint; there was no legitimate concern that the wrongful transfer would affect "good time" or parole decisions, and no reasonable expectation that the alleged wrong would be repeated); *American Postal Workers Union v. Frank*, 968 F.2d 1373, 1377 (1st Cir.1992) ("The presence of viable damages claims ... does not establish a 'present case or controversy regarding [equitable] relief,' *O'Shea* [*v. Littleton* ], 414 U.S. [488,] 495–96 [94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974) ].").

**29.** Domegan asserted Eighth Amendment claims, and companion substantive due process claims, for damages allegedly sustained as a consequence of the wrongful procedural place-

at 260, 263, 98 S.Ct. at 1050, 1052; *Rodriguez de Quinonez v. Perez*, 596 F.2d 486, 491 (1st Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). The only wrong occasioned Domegan was the unconstitutional denial of his absolute right to procedural due process. Although a civil rights plaintiff may demand compensatory damages for mental and emotional distress resulting from a procedural due process deprivation,[30] *see Carey*, 435 U.S. at 263–64, 98 S.Ct. at 1052 (damages for mental and emotional distress); *Maldonado Santiago v. Velazquez Garcia*, 821 F.2d 822, 829 (1st Cir.1987) (same) (monetary *damages* are *not presumed* to flow from the violation). *Carey*, 435 U.S. at 260–64, 98 S.Ct. at 1050–52; *id.* at 263, 98 S.Ct. at 1052 ("[W]here a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure.").[31]

### d. *Summary*

Supreme Court analysis on the sufficiency of the *relief* obtained in litigation invariably centers on its capacity to redress real wrongdoing. The Supreme Court has never ruled (nor adverted with approval to a case which has held) an award of fees improper under section 1988 merely because the monetary relief obtained in litigation was *de minimis* in amount. All cases adverted to in *Texas Teachers* involved circumstances in which the *wrong established* was more illusory than real, or the *relief obtained* in litigation was so insubstantial in relation to the relevant legal relationship as to be considered "purely technical or *de minimis*." Thus, "prevailing party" status in the instant case was neither precluded by the inability to obtain a compensatory damage award on the procedural due process claim, nor by the failure to establish liability on other claims, which are matters appropriately considered in assessing the reasonableness of the fee award. *See Texas Teachers*, 489 U.S. at 793, 109 S.Ct. at 1493–94; *de Jesus*, 918 F.2d at 234 (citing *Texas Teachers*).

Were we to conclude that a nominal damage award in a civil rights action based on a nonpecuniary deprivation represents mere *de minimis* success, we would rule out fee shifting under section 1988 notwithstanding that the claimant recovers an enforceable judgment on a significant constitutional claim. We find no warrant in Supreme Court caselaw for doing so. *See Carey*, 435 U.S. at 266, 98 S.Ct. at 1054 (procedural due process deprivation is actionable without proof of injury because the right to procedural due process is "absolute," and "because of the importance to organized society that procedural due

---

ment on AFP and other AFP-related conduct by prison officials. The jury found for the defendants on these claims. Under *Texas Teachers*, Domegan's lack of success on those claims, and thus on a large part of his complaint, goes to the degree of success and the amount of the § 1988 award, not its availability. *See Texas Teachers*, 489 U.S. at 792, 109 S.Ct. at 1493.

**30.** Domegan demanded compensatory damages *aggregating* $50,000 in connection with *all* his federal constitutional claims *and* the state law claim. Moreover, the special verdict form indicates that the *entire* $350,000 punitive damage demand related to the Eighth Amendment claim.

**31.** This is in noteworthy contrast to certain other constitutional violations resulting in nonpecuniary injury, such as deprivations of the right to vote, for which presumptive damages may be recoverable for the *definite*, though not readily measurable, harm presumed to flow from the bare violation. *See Stachura*, 477 U.S. at 310–11 & 311 n. 14, 106 S.Ct. at 2545, n. 14 (discussing *Nixon v. Herndon*, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759 (1927), and other cases); *Carey*, 435 U.S. at 264–65 & 265 n. 22, 98 S.Ct. at 1053 n. 22 (emphasizing that "elements and prerequisites for recovery" for one constitutional deprivation are not necessarily appropriate for another; discussing voting rights cases); *see also Walje v. City of Winchester, Kentucky*, 827 F.2d 10, 12–13 (6th Cir.1987) (presumed damages available for First Amendment deprivation not involving the right to vote); *City of Watseka v. Illinois Pub. Action Council*, 796 F.2d 1547, 1559 (7th Cir. 1986) (presumed damages for deprivation of First Amendment solicitation rights), *aff'd*, 479 U.S. 1048, 107 S.Ct. 919, 93 L.Ed.2d 972 (1987). *But cf. Schneider v. Colegio de Abogados de Puerto Rico*, 917 F.2d 620, 639 (1st Cir.1990) (upholding nominal damage award in First Amendment case where plaintiff offered no proof of damages), *cert. denied*, — U.S. —, 112 S.Ct. 865, 116 L.Ed.2d 772 (1992).

process be observed."); [32] *see also Stachura*, 477 U.S. at 380 n. 11, 106 S.Ct. at 2544 n. 11 (nominal damage award appropriate to vindicate rights whose infringement causes no "actual" injury). Thus, we do not understand *Texas Teachers* to condone (let alone require) disentitlement to "prevailing party" status merely because the final judgment redressing a procedural due process violation awards only nominal damages.

■ A nominal damage award based on a denial of the predeprivation process due the claimant whose culpability is later conceded presents a tantalizing candidate for characterization as "technical or *de minimis* success." Yet to do so would be to conclude that the constitutional violation itself was *de minimis*, which cannot be done under current Supreme Court caselaw, *see, e.g., Carey*, 435 U.S. at 266, 98 S.Ct. at 1054, our own precedent, *see, e.g., Perez v. University of Puerto Rico*, 600 F.2d 1, 2 (1st Cir.1979), or the congressional intent underlying section 1988. We therefore conclude that "prevailing party" status is appropriate where the claimant establishes a significant procedural due process deprivation and obtains an enforce-

able nominal damage award against the responsible public officials.

### 2. *Special Circumstances*

■ Appellants argue that Domegan is entitled to no fee award, because he allegedly exhibited an "inexcusable reaching for fees" by submitting an inflated fee application. *See Lewis v. Kendrick*, 944 F.2d 949, 958 (1st Cir.1991) (on rehearing).[33] In *Lewis*, we denied a fee award where the application reflected (1) no "good faith" effort to exclude excessive, redundant, or otherwise unnecessary hours, (2) no reduction for time spent on unsuccessful claims, and (3) no allowance for the limited "degree of success" achieved by the plaintiff. *Id.* at 957–58 (relying on *Hensley v. Eckerhart*, 461 U.S. 424, 434, 436, 103 S.Ct. 1933, 1940, 1941, 76 L.Ed.2d 40 (1983)). On the other hand, the present fee request reflects reasonable regard for the concerns expressed in *Lewis*, as evidenced in part by the fact that the number of hours for which compensation was requested approximates only one third of the hours counsel devoted to the litigation. These self-imposed, pre-application cuts substantially anticipated virtually all of appellants' present contentions.[34]

---

**32.** Significantly, the Court noted in *Carey* that "the potential liability of § 1983 defendants for attorney's fees ... provides additional—and by no means inconsequential—assurance that agents of the State will not deliberately ignore due process rights." *Carey*, 435 U.S. at 257 n. 11, 98 S.Ct. at 1049 n. 11.

**33.** As the present claim is raised for the first time on appeal, we review for "plain error" indicative of "a 'clear miscarriage of justice'...." *Playboy Enterprises, Inc. v. Public Serv. Comm'n.*, 906 F.2d 25, 40 (1st Cir.) (quoting *Brown v. Trustees of Boston Univ.*, 891 F.2d 337, 359 (1st Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 388, 112 L.Ed.2d 399 (1990)).

**34.** An examination of certain objections raised by appellants demonstrates that the fee application was prepared with no purpose to inflate fees. For instance, appellants suggest that Procter & Hoar's over-staffing and personnel changes caused "a spate of conferences, cross-conferences, drafts, revisions, edits of other people's drafts and revisions, etc., for which plaintiff sought compensation." Our review of the application allays any such concerns. Approximately 267 of the 352 time entries in the fee application pertain to services performed by the

lead partner and the primary associate who took charge of the litigation several years after Procter & Hoar was appointed. Moreover, the application pares the total hours billed, in recognition of the fact that "some of the time billed was redundant, owing to unavoidable changes of staffing on the case, or was less efficient than it might have been because some assignments were given in the first instance to law clerks and interns."

Appellants further contend that the fee request was inflated, because, they say, virtually the entire trial was dedicated to litigating the unsuccessful claims, lead trial counsel sought compensation for more than ten hours daily even though the trial was conducted on a half-day basis, and compensation was requested for two trial attorneys. Nevertheless, it was not improper to request compensation for the trial time spent securing the due process nominal damage award. In recognition of the lack of success on the other claims, compensation was requested for only one third of the trial time. Contrary to appellants' suggestion, moreover, we do not find the pretrial discovery entries excessive, nor, for the most part, inclusive of work for which compensation should not have been sought. Virtually all of the discovery ser-

Appellants contend that the fee application inadequately reflected the limited "degree of success" achieved in litigation, as demonstrated by the sizeable reduction imposed by the district court, and, therefore, that the total compensation requested was inflated. Our review discloses, however, that appellants neither identify any substantial failure of "reasonable compliance with the judicial pronouncements" relating to fee requests, *Lewis*, 944 F.2d at 958 (on rehearing), nor challenge the veracity of the time sheets or the supporting affidavits. Although we conclude that further reductions are required, we discern no basis for questioning the *bona fides* of the fee application under the "special circumstances" exception.

### 3. *Size of the Award*

■ The fee application requested an award totaling $86,016.80 for legal services performed during the five-year period spanned by the litigation. The district court found "the rates and hours charged for various aspects of the case to be reasonable,"[35] but halved the request to reflect the limited degree of success achieved in litigation. *See Hensley*, 461 U.S. at 434–37, 103 S.Ct. at 1940–41. The $41,441.55 award purportedly allowed compensation only for the 388.5 hours "explicitly spent on the due process issue, the summary judgment motion, and the [interlocutory] appeal. . . ."

■ We review the reasonableness of the attorney fee award for abuse of discretion, finding an abuse " 'when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.' " *Foster v. Mydas Assoc., Inc.*, 943 F.2d 139, 143

---

vices for which compensation was requested (including the deposition of a Department of Correction nutritionist and the interrogatories propounded to victorious defendants) were not plainly unrelated to the successful due process claim, in support of which evidence was needed to establish the existence and nature of the due process *deprivation*. *See infra* note 40.

Appellants point to a handful of "mixed" entries pertaining to amendments to the complaint which are not compensable because they related to unsuccessful claims (even though each entry included some compensable services as well). Likewise, a number of other "mixed" entries relating to unsuccessful claims should not have been included in the fee application. But for these minor exceptions, however, the fee application accorded due regard to the requirement that compensation not be sought for services rendered on unsuccessful claims. In all fairness, we cannot conclude that these lapses in precision fee-cutting approached those involved in *Lewis*, such that the present award again should be slashed under the "special circumstances" test.

**35.** The only appellate challenge to the reasonableness of these hourly rates asserts that the district court was required to compensate counsel at different rates for different services, but instead allowed a flat hourly rate for all legal services performed by the same attorney. We do not accept Domegan's contention that appellants *waived* their right to contest the reasonableness of the fee award on this basis by reason of their failure to present evidence as to reasonable hourly rates. *Cf. Blum v. Stenson*, 465 U.S. 886, 892 n. 5, 104 S.Ct. 1541, 1545 n. 5,

79 L.Ed.2d 891 (1984) (failure to present evidence supporting challenge to the "accuracy and reasonableness of the hours charged"). Nevertheless, their failure to present evidence that the flat rates approved by the district court were unreasonable means that appellants cannot *prevail* on their "flat rate" challenge. Since the "bottom line" is a reasonable fee award, their "flat rate" challenge cannot succeed unless appellants show that the flat rates allowed by the district court were not reasonable average rates for the types of legal services determined compensable by the district court. We do not think appellants can manage their burden without establishing the hourly rates which they would propose be used in place of the flat rates approved by the district court, especially since the approved rates do not appear excessive on their face. Although appellants contend that flat rates are impermissible as a matter of law, we have never indicated as much, *see infra* p. 423; nor do we believe it necessary to reach the issue on the present record. *See Foley v. City of Lowell, Mass.*, 948 F.2d 10, 21 (1st Cir.1991) (Where "a fee target has failed to offer either countervailing evidence or persuasive argumentation in support of its position, we do not think it is the court's job [ ] to do the target's homework. . . .").

We likewise reject the contention that appellants failed to preserve their challenges to particular *hours* billed, by failing to present countervailing evidence below. These challenges—founded primarily on caselaw, the insufficiency of the billing entries, and argumentation based on the circumstances in the present case—did not depend on evidentiary support.

(1st Cir.1991) (quoting *Independent Oil & Chem. Workers of Quincy, Inc. v. Proctor & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir.1988)). "District courts have discretion when awarding fees and expenses under 42 U.S.C. § 1988, [*Hensley*], and appellate courts accord deference to the exercise of that discretion." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir.1984). The district court enjoys broad discretion in setting the amount of an attorney fee award. *de Jesus v. Banco Popular de Puerto Rico*, 951 F.2d 3, 5 (1st Cir.1991) [hereinafter *de Jesus II*]; *United States v. Metropolitan Dist. Comm'n*, 847 F.2d 12, 14 (1st Cir.1988). On an "abuse of discretion" review, the basis for the fee award is to be reviewed carefully, and we must ensure that the amount is reasonable, but "we normally prefer to defer to any thoughtful rationale and decision developed by a trial court and to avoid extensive second guessing." *Grendel's Den*, 749 F.2d at 950.

### a. *Disproportion*

■ Appellants contend that the attorney fee award is grossly disproportionate to the one dollar damage award, particularly in light of the damages demanded. The amount of the monetary recovery is "certainly [a] relevant" factor to be considered in setting the size of an attorney fee, *Rivera*, 477 U.S. at 574, 106 S.Ct. at 2694 (plurality op.); *Foley*, 948 F.2d at 19–20 (amount of damages relevant to determination of reasonable fee; fee may be reduced when amount of damages sought is large but recovery small); *Home Placement Serv., Inc. v. Providence Journal Co.*, 819 F.2d 1199, 1210 (1st Cir.1987) ("recovery of only nominal damages can be cause for

reducing a fee award if the litigation is not otherwise significant") (Clayton Act case); *Perez*, 600 F.2d at 2 (nominal damage award one factor that may affect amount of fee).

■ Nevertheless, disproportion alone does not render an award unreasonable, *Rivera*, 477 U.S. at 574, 106 S.Ct. at 2694 (plurality op.); *id.* at 585, 106 S.Ct. at 2699 (Powell, J., concurring); *Foley v. City of Lowell, Mass.*, 948 F.2d 10, 20 (1st Cir. 1991) (reasonable fee may exceed damage recovery "several times over"), and a judgment for nominal damages may warrant a substantial fee award. *Aubin v. Fudala*, 782 F.2d 287, 290–91 (1st Cir.1986) (suggesting intrinsic value in "simple declaration of violations of federal law."); *Perez*, 600 F.2d at 2 n. 2 (policy of awarding nominal fees for recovery of nominal damages would "handicap those seeking to assert civil rights to the same extent as denying fees altogether"); *see also Ruggiero v. Krzeminski*, 928 F.2d 558, 564 (2d Cir. 1991) (upholding $12,833.34 fee based on $1.00 damage award); *Allen v. Higgins*, 902 F.2d 682, 684–85 (8th Cir.1990) ($10,000 fee based on $1.00 damage award); *Home Placement Serv.*, 819 F.2d at 1212 (awarding $16,989 for portion of litigation relating to nominal damage award); *McCann v. Coughlin*, 698 F.2d 112, 129 (2d Cir.1983) (that successful procedural due process claimant who recovered $1.00 damage award did not warrant reduction in attorney fee award of almost $50,000).[36]

### b. *Summary Judgment*

■ Appellants argue that the district court should not have allowed compensation for all legal services attributed to the

---

**36.** Of course, the "degree of success" achieved in litigation is a "critical" factor in fixing the amount of an award under section 1988. *Texas Teachers*, 489 U.S. at 789–90, 109 S.Ct. at 1492 (discussing *Hensley*). Appellants do not contend, however, that the district court failed to reduce the fee request to reflect the recovery of *only* a nominal damage award on the procedural due process claim and the lack of success realized on the other claims in litigation. Rather, even though the court reduced the number of compensable hours from 808.3 to 388.5 for *these* purposes, appellants still contend that the

"extraordinarily high award" constituted an abuse of discretion. As we find no abuse of the district court's broad discretion—based on the disproportion between the fee and damage awards—*see Nydam v. Lennerton*, 948 F.2d 808, 813 (1st Cir.1991) (appellate court will not interfere "'[w]here ... [a] district court [has] carefully weighed the correct factors and arrived at a result within a supportable range....'") (quoting *Wojtkowski v. Cade*, 725 F.2d 127, 131 (1st Cir.1984)), we turn to appellants' demands for further reductions relating to fees for particular services.

422

summary judgment proceedings, since a significant portion went toward the unsuccessful Eighth Amendment claims, which appellants assert were wholly distinct from the successful due process claim. *See Hensley*, 461 U.S. at 434–35, 103 S.Ct. at 1940 (no compensation allowable for services on unsuccessful claims segregable from successful ones); *Wojtkowski v. Cade*, 725 F.2d 127, 130 (1st Cir.1984) (same). The district court implicitly determined, however, that the due process and Eighth Amendment claims were interrelated.[37] As its interrelatedness finding is adequately supported in the record,[38] we see no abuse of discretion in the district court decision to forego the request to separate the time spent on interrelated claims where it would have been largely impracticable to do so. *Aubin v. Fudala*, 821 F.2d 45, 47 (1st Cir.1987) [hereinafter *Aubin II*]; *see Hensley*, 461 U.S. at 435–36, 103 S.Ct. at 1940–41 (focusing on overall success when different claims are legally *or* factually intertwined); *Nydam v. Lennerton*, 948 F.2d 808, 812 (1st Cir.1991) (no abuse of discretion where district court determined that successful and unsuccessful claims arose from core of common facts); *Fishman v.*

*Clancy*, 763 F.2d 485, 491 (1st Cir.1985) (same); *see also Nydam*, 948 F.2d at 813 (appellate court will not interfere " '[w]here ... [a] district court [has] carefully weighed the correct factors and arrived at a result within a supportable range....' ") (quoting *Wojtkowski*, 725 F.2d at 131).

Appellants point to certain time-sheet entries which reflect services devoted to the successful "due process" claim *or* the unsuccessful Eighth Amendment claim.[39] Of course, the interrelatedness *finding* is not undermined simply because it may have been practicable to discern some further, *partial* distinction between the services rendered on successful and unsuccessful claims. *See Wagenmann v. Adams*, 829 F.2d 196, 225 (1st Cir.1987) (upholding interrelatedness finding, noting clearly segregable item on billing sheets); *see also Aubin II*, 821 F.2d at 47 ("It might not have been practical for the lawyers to allocate *each* hour among the several factually related legal claims.") (emphasis added). For example, a billing entry which distinguishes between legal research on different claims does not necessarily enable a clear allocation of fees where the different

**37.** After observing that "a one dollar award constitutes rather less than a resounding victory," the district court opinion quoted the following passage from *Hensley:*

> If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were *interrelated,* non-frivolous, and raised in good faith.

*Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941 (emphasis added). The section of the majority opinion from which the quoted excerpt is taken provides instruction on the proper approach to fee applications for legal services on interrelated, nonsegregable claims where the claimant achieved limited success in litigation.

We think it clear, therefore, that the district court recognized the interrelatedness of these claims. The court awarded compensation for "only those hours explicitly spent on the due process issue, the summary judgment motion, and the [defendants' interlocutory] appeal (including research on qualified immunity issues)...." As we understand the district court award, since Domegan's "success [on the interrelated claims] may fairly be characterized as 'limited,'" attorney fees were awarded only for the legal services in connection with the sum-

mary judgment litigation and the interlocutory appeal. Additionally, legal services specifically devoted to the due process claim (i.e., any such services which *could* be separated out) were determined compensable, as that was the only claim on which Domegan "garnered [any] success." *See also infra* n. 40.

**38.** For example, even though the due process and Eighth Amendment claims differed, the "Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment" reveals that they arose out of the same circumstances, and both concerned Domegan's placement on the AFP. Although not all material facts are common to both claims, the core facts are common. Moreover, both claims were dependent on the factual investigation and legal research underlying the portion of the summary judgment memorandum relating to the direct and supervisory liability of the individual appellants.

**39.** Only one of these time-sheet entries was approved in connection with the fee award for summary judgment services, an entry for 3.8 hours spent on the due process and Eighth Amendment claims, *and the facts* section of Domegan's summary judgment memorandum. We adjust for this entry (# 111) as indicated below. *See infra* note 44.

claims are *factually* intertwined. *See, e.g., supra* note 39. As these summary judgment claims were interrelated,[40] appellants' complaint that compensation should not have been allowed because the time entries might have distinguished more sharply between the due process and Eighth Amendment claims is unavailing in the present circumstances. *See Rivera*, 477 U.S. at 570 n. 4, 106 S.Ct. at 2692 n. 4 (plurality op.) ("[W]hile it is true that some of the disputed time records do not identify the precise claims worked on at the time, we find this lapse unimportant, in light of the District Court's finding that all of respondents' claims were interrelated.").

The award of fees for professional services in the summary judgment proceedings must also be viewed in the context of the award as a whole. The district court awarded fees only for pretrial summary judgment services, the interlocutory summary judgment appeal, and the services specifically related to the due process claim. Consequently, due to the interrelatedness of the Eighth Amendment and due process claims, as a practical matter essentially no fee award was made for virtually all legal services devoted to pretrial discovery and to the trial itself, since such entries did not distinguish among interrelated claims. Furthermore, with the exception of the time devoted to the summary judgment proceedings and the related interlocutory appeal, the district court rationale ensured that counsel were penalized for any failure to segregate successful and unsuccessful claims on their billing sheets. Thus, the district court rationale affords counsel a substantial inducement to maintain detailed time records, wherever practicable clearly delineating the particular claims and issues to which the legal services related. *See Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941 (billing records should enable court to identify distinct claims); *see also Grendel's Den*, 749 F.2d at 952 (substantial fee reduction appropriate if *detailed* contemporaneous time records not kept); *Wojtkowski*, 725 F.2d at 130 (billing sheets should distinguish between particular issues); *Nadeau*, 581 F.2d at 279 (same).

Careful review reassures us that the district court tailored its total award to reflect the value of the legal services in light of the time reasonably required for their performance and the degree of success achieved.[41] *Gabriele v. Southworth*, 712 F.2d 1505, 1507 (1st Cir.1983) ("Nor should the judge become so deluged with details that [s]he is unable to view the claims for fees in perspective. [S]he must retain a sense of overall proportion."). There was no abuse of discretion in determining the number of compensable hours. *See United States v. Metropolitan Dist. Comm'n*, 847 F.2d 12, 17 (1st Cir.1988) (separation of "wheat from chaff" in fee award context is, "within broad limits," a matter for the district court's discretion).[42]

---

**40.** Appellants urge that these claims were entirely separate, due to the fact that the Eighth Amendment claim concerned so-called "substantive conditions of confinement" while on the AFP, whereas the due process claim dealt with "procedural issues *before* implementation of the AFP." However, as Domegan points out, one of the summary judgment disputes turned on whether due process protection attached, which depended on whether appellants' actions constituted punishment as distinguished from mere administrative restraint. The due process portion of the summary judgment memorandum therefore focused in part on the nature of the deprivations caused by the AFP placement, and the lack of a sufficient administrative rationale for the deprivations. ("Nutritionally deficient and unvaried meals in no way advance the interest in preventing health hazards caused by thrown food and waste."). Thus, this section of the memorandum did rely on evidence as to the conditions of confinement while Domegan was on the AFP.

**41.** In response to the limited "degree of success" achieved in litigation, the district court halved the fee *request*, even though the request sought compensation only for about one third the total time counsel devoted to the case. *Cf. Home Placement Serv.*, 819 F.2d at 1211–12 (awarding 50% of fees related to portion of litigation in which nominal damages were obtained).

**42.** Appellants argue that the district court should have disallowed fees for legal services on the unsuccessful due process claims against their codefendants. Yet appellants propose no practicable method for doing so. *See Cobb v. Miller*, 818 F.2d 1227, 1233–34 (5th Cir.1987) (reversing fee-reduction order where plaintiff succeeded on but one of three interrelated claims against different defendants: interrelat-

### c. *Uniform Hourly Rates*

Appellants assert error in the district court's approval of a uniform hourly rate for all legal services performed by each attorney regardless of the nature of the services rendered (e.g., research, conferencing, court appearances). In *Maceira v. Pagan*, 698 F.2d 38, 41 (1st Cir.1983), we noted that, "while *Miles v. Sampson*, [675 F.2d 5, 9 (1st Cir.1982),] upon which [appellants] rel[y], indicates the importance of using more than one rate when appropriate, it does not hold that differential rates are *always* required." *Maceira*, 698 F.2d at 41 (citing cases) (emphasis in original). Although it would have been within the bounds of the district court's broad discretion to assign differential rates for various legal services, appellants proposed no alternate rates and submitted no evidence that the rates charged by Procter & Hoar were not reasonable. We find no abuse of discretion in the decision to forego differential rates in these circumstances.

### d. *Excessive Hours*

██ Appellants contend that the 247 hours attributed to the summary judgment litigation, and the 152 hours to the related interlocutory appeal, were excessive. The hours determined compensable by the district court do not appear excessive on their face and no particular rationale is assigned in support of the allegation of excessive-

ness as it relates to the summary judgment litigation. We recognize that the district court was better situated to evaluate whether the time spent on these services was reasonably necessary. *See Foley*, 948 F.2d at 19 ("[A]n appellate tribunal lacks the means to replicate the trial court's first-hand knowledge of the litigation and its nuances."); *Wagenmann*, 829 F.2d at 224–25 (district court "has far greater familiarity than do we with how much was done, who did it, and how effectively the result was accomplished"); *Chalmers v. Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986) ("The district court is in the best position to determine in the first instance the number of hours reasonably expended in furtherance of the successful aspects of a litigation."). We therefore defer to the district court's informed judgment that the hours devoted to "various aspects of the case" were reasonably efficient and necessary.[43]

### e. *Challenges to Particular Time-sheet Entries*

██ Appellants contend that the fee award, contrary to the district court's own criteria, includes compensation for services not devoted to the summary judgment litigation, the interlocutory appeal, or the procedural due process claim. Appellants contest the allowance of compensation based on certain "mixed" entries which appear to

ed claims did "not arise from a course of conduct that is easily differentiated on the basis of each defendant."). The only significant summary judgment services which might conceivably have been distinguished on such a basis would have been legal research and drafting related to the supervisory liability of *the appellants*, as distinguished from their victorious co-defendants. As for any other services which might have been distinguished on the basis of the particular defendant involved, (*e.g.*, pretrial discovery), the district court allowed no compensation. In sum, appellants have failed to demonstrate that the fee award includes compensation for any significant, readily-segregable services specifically relating to the victorious codefendants.

**43.** Appellants attempt to assign grounds for their contention that too much time was spent on the interlocutory appeal; we find none convincing. First, their contention that the request was excessive because Procter & Hoar did not

need to compile the appendix for the interlocutory appeal (for which the district court allowed 1.5 hours of compensable time) is an insufficient basis for finding that other, necessary interlocutory appeal services (research and drafting) did not reasonably require as much time as claimed. Second, we find particularly unconvincing appellants' overall plaint of excessiveness, as well as their direct attack on the services performed by one attorney whose (minimal) time was spent largely in researching interlocutory appellate jurisdiction, especially since appellants had attempted to present appellate claims not subject to interlocutory appeal. *See infra*, pp. 424–425. The additional time reasonably spent successfully resisting appellants' attempt to assert appellate jurisdiction where none existed is fully compensable. Although appellants advance several other objections to the reasonableness of the hours determined compensable by the district court, we find none of sufficient moment to warrant discussion.

combine hours devoted to compensable and noncompensable services.

Our concerns about ambiguous time-sheet entries are well recognized. *See, e.g., Furtado v. Bishop*, 635 F.2d 915, 922 (1st Cir.1980) (disallowing compensation for "Conf[erence] G. Sousa and travel," since the entry did not indicate the time spent in conference and "we are disinclined to compensate an attorney at professional rates for travel time....."). Accordingly, we have culled out, for disallowance on these grounds, various "mixed" entries to which appellants have called our attention, totaling $3,502.60.[44] In other respects, we find that the district court's handling of various "mixed" time entries was well within its broad discretion. *Metropolitan Dist. Comm'n*, 847 F.2d at 17 (separation of "wheat from chaff," "within broad limits," is within the discretion of the district court).

Appellants challenge an apparent allowance of compensation based on "at least three" entries for research relating to interlocutory appellate review. As the defendant state officials unquestionably were entitled to an interlocutory appeal from the denial of their motion for partial summary judgment on qualified immunity grounds, appellants insist that no interlocutory appeal research was necessary. We remind appellants that there were two other appellate claims which they had no right to present on interlocutory appeal. *See Domegan v. Fair*, 859 F.2d 1059, 1061–62 (1st Cir.1988) (no interlocutory appeal permitted on two of appellants' three claims). We have been given no reason to believe that the services rendered in connection with these three entries were unnecessary.[45]

#### f. *Computational Errors*

Finally, appellants assign errors in the computation of the award, which require that the award be reduced by $165.60 (2.4 hours at $69.00 per hour); $295.00 (5.9 hours at $50.00 per hour);[46] $484.50 (5.1 hours at $95.00 per hour), and increased by $90.00 (1 hour at $90.00) and $40.00 (.4 hours at $100.00).[47]

*The attorney fee award is reduced to $37,123.85. The district court judgment is affirmed, as modified; costs to appellee.*

LEVIN H. CAMPBELL, Senior Circuit Judge (concurring).

I join in Judge Cyr's exceedingly thoughtful opinion. Even if one were not fully persuaded, the result is dictated by this Circuit's prior precedent and our panel is bound by stare decisis. The Supreme Court will presumably decide the matter definitively next term in *Farrar v. Hobby.*

---

**44.** Thus, all compensation is denied for the services identified in the following entries: ## 36, 69, 97, 111, 124, 182, 190, 192, 195, 206, and 207; totaling 37.8 hours.

**45.** A fourth billing entry involved "[r]esearch on appealability of qualified immunity ruling." The 1.7 hours billed for this entry seem entirely reasonable, as does the .3 hour entry for a conference on the motion to dismiss the appeal and research on appellate jurisdiction.

**46.** The district court apparently allowed 8.3 hours for services relating to liability issues at the pretrial discovery stage which had no connection with the interlocutory appeal or with qualified immunity. The award is reduced accordingly.

**47.** The district court allowed 55.0 hours at $95.00 per hour for services by Attorney Bagger. As appellants point out, the fee application claimed that Ms. Bagger spent 49.1 hours of compensable time (on summary judgment and the interlocutory appeal) at the $95.00 hourly rate. Our review of the fee request and time sheets indicates that she actually devoted 49.9 hours, but that other minor miscalculations necessitate the net adjustment set forth in the text.