January 5, 1994 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

Nos. 92-2016
92-2132
93-1504
93-1518

GAMMA AUDIO & VIDEO, INC., ET AL.,

Plaintiffs, Appellees, Cross-Appellants,

v.

EAN-CHEA D/B/A OVERSEAS VIDEO, ET AL.,

Defendant, Appellant, Cross-Appellees.

ERRATA SHEET

The opinion of this court issued on December 22, 1993, is

amended as follows:

Page 10, lines 6 and 13: Change "work" to "works."

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

Nos. 92-2016
92-2132
93-1504
93-1518

GAMMA AUDIO & VIDEO, INC., ET AL.,

Plaintiffs, Appellees, Cross-Appellants,

v.

EAN-CHEA D/B/A OVERSEAS VIDEO, ET AL.,

Defendant, Appellant, Cross-Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella, Circuit Judge,

Bownes, Senior Circuit Judge,

and Cyr, Circuit Judge.

William F. Spallina on brief for defendant appellant/cross-

appellee Ean-Chea, d/b/a Overseas Video.
Philip S. Shaw, with whom Rafferty, Polich & Shaw was on

brief for plaintiffs appellees/cross-appellants Taing Tao, Meng
I. Ung and Chen V. Ung and Marvin Feldman and Tetel & Feldman,

P.C. on brief for plaintiff appellee/cross-appellant Gamma Audio

& Video, Inc.

December 22, 1993

BOWNES, Senior Circuit Judge. These cross-appeals
BOWNES, Senior Circuit Judge.

involve claims of copyright infringement under the Copyright

Act of 1976, 17 U.S.C. 101, et seq. After a bench trial,

judgment was entered in favor of plaintiffs, Gamma Audio &

Video, Inc., Taing Tao, Meng I. Ung and Cheng K. Ung

(collectively "Gamma"), on their claim that defendant, Ean-

Chea, unlawfully distributed two videotapes containing four

episodes of the Cambodian language version of Jade Fox, a

popular Chinese language soap opera. In addition to

obtaining a permanent injunction against Ean-Chea, Gamma was

awarded $2,500 in statutory damages, as well as costs and

attorney's fees. Both parties appeal from various aspects of

the final judgment entered below and seek to recover

appellate attorney's fees. We affirm the district court on

all issues except one; we reverse the district court's

finding that the four episodes of Jade Fox constitute one

"work" for purposes of computing statutory damages. Because

we hold that four works were infringed, we vacate the

district court's judgment ordering Ean-Chea to pay Gamma

$2,500 for the infringement of only one work, and remand for

a redetermination of damages.

I.

BACKGROUND

Television Broadcasts Ltd. ("TVB") is a producer of

Chinese language television programs and videotapes of those

-2-
2

programs. The two programs at issue are Jade Fox and Hunters

Prey. They consist, respectively, of twenty-four and twenty

one-hour episodes. Both are Chinese language "Kung Fu"-type

serials created by TVB in Hong Kong and originally broadcast

there. Although considerably more violent, the programs are

of the same genre as American soap operas. It is unclear

whether the episodes were originally broadcast daily or

weekly. TVB holds a valid United States copyright in each of

the programs.

Through a series of four recorded licensing

agreements, Gamma obtained three exclusive rights with

respect to TVB's programs. Gamma obtained the right to dub

TVB videotapes into Cambodian, to duplicate the dubbed

versions, and to distribute by rental the Cambodian versions

in thirty-seven states including Massachusetts. Gamma

assigned all copyrights in the dubbed works to its licensor,

Telefeature, Inc. At the time this action was commenced,

neither Gamma nor anyone else had registered the copyrights

in the derivative works created by Gamma.

Shortly thereafter, Gamma entered into an exclusive

licensing agreement with Taing Tao and his partners, the

other individual plaintiffs. The agreement gave them the

exclusive right to distribute, by rental to the public, the

Cambodian language videotapes created by Gamma, in six states

including Massachusetts. Ean-Chea owns and operates two

-3-
3

video rental stores in Lowell, Massachusetts. The stores are

named Overseas Video and Overseas Video II. Ean-Chea was the

authorized distributor of the Cambodian versions of TVB's

programs in Massachusetts for Gamma's predecessor.

On February 9, 1991, Chea Sokhoeun, acting on

Gamma's behalf, went to Overseas Video and rented tapes four

through eleven of the Cambodian Jade Fox series. Because

each tape contained two episodes, the rented tapes covered

episodes seven through twenty-two.

On June 13, 1991 Gamma commenced this action in the

United States District Court for the District of

Massachusetts. The complaint contained six causes of action.

Gamma alleged violations of the Copyright Act of 1976, 17

U.S.C. 101, et seq. (the "Copyright Act") and the Lanham

Act, 15 U.S.C. 1051 et seq. It also alleged four state-law

claims: unfair competition, conversion, tortious

interference with advantageous business relations and a

constructive trust. Gamma alleged that Ean-Chea was behind a

massive pirating scheme, and requested millions of dollars in

relief.

Together with the complaint, Gamma submitted a one

page document entitled "Motion For Seizure and Impoundment."

By this motion, Gamma sought an ex parte order allowing it

"to seize and impound any and all video tapes which are owned

or under the control of the defendants and which are

-4-
4

Cambodian language versions of the TVB programs, produced

under the authority of plaintiff Gamma Audio & Video, Inc.

including any and all such videotapes on the premises of the

respective stores of defendants." Simultaneously, Gamma

moved for a temporary restraining order and preliminary

injunction enjoining Ean-Chea from further acts of

infringement and from disposing any potentially

"incriminating" materials such as business records and

advertising materials. This motion also asked that Ean-Chea

deliver up ... to be impounded during the
pendency of this action, all copies of
the Gamma TVB Programs and all negatives,
prints, matrices, master tapes, all
business records relating to the sale
and/or rental of video tapes of the Gamma
TVB Programs, and all other materials
including video recorders, automatic
video tape rewinders, and television
monitors (collectively "machines") used
in the making of such infringing copies
and all advertising and materials used in
the promotion thereof.

Gamma was authorized to visit Ean-Chea's video stores, in the

company of a U.S. Marshal or Deputy Sheriff, "for the

purposes of inspection, inventorying, and photographing

materials alleged to infringe," and to carry out the

impoundment.

District Judge Mazzone granted the motion for

seizure and impoundment and a T.R.O. and ordered Gamma to

post a bond in the amount of $2,500. On June 24, 1991,

District Judge Zobel, to whom the case was assigned, heard

-5-
5

argument on Gamma's motion for a preliminary injunction and

granted it.

In the meantime, on June 14, the individual

plaintiffs and their attorneys, accompanied by a local deputy

sheriff, went to Overseas Video to carry out the seizure and

impoundment. The raid yielded nine videotapes containing

episodes three through twenty of Hunters Prey, which were

found in a cardboard box behind the front counter, three

high-speed commercial videotape duplicating machines, and a

notebook containing business records of Overseas Video that

reflected the shipment to Montreal of an unauthorized copy of

a program called Serpentine Romance.

Six months later, on December 13, 1991, Ean-Chea

moved for an order compelling Gamma to return the impounded

video equipment and tapes. On January 13, 1992, Judge Zobel

granted the motion, to which no opposition had been

submitted. On January 17, however, Gamma moved for

reconsideration; and on February 26 Judge Zobel granted

Gamma's motion for reconsideration and then denied Ean-Chea's

motion for return of the impounded material.

On April 28, Gamma elected to recover statutory as

opposed to actual damages, on its claim of copyright

infringement. The next day it voluntarily dismissed counts

two through six of its complaint, leaving only the copyright

claim to be tried. By this time, Gamma realized that the

-6-
6

copyrights in all but four episodes of Jade Fox, numbers

thirteen through sixteen, as well as the copyright in

Serpentine Romance had not been registered prior to the

commencement of the lawsuit, and therefore could not support

an action seeking statutory damages. These episodes

therefore dropped out of the case, leaving only the four

episodes of Jade Fox and the seized videotapes of Hunters

Prey, as subjects of this litigation.

On May 11, 1992, at the close of a four-day bench

trial, the trial judge stated her findings of fact. In sum,

the court found that Gamma had established infringement with

respect to episodes thirteen through sixteen of Jade Fox, but

had failed to carry its burden of proving infringement with

respect to the seized Hunters Prey tapes.

The court then requested additional submissions by

counsel for both parties on two issues. First, whether Ean-

Chea's unauthorized distribution of the Cambodian version of

four episodes of Jade Fox could support a judgment for

statutory damages. Second, whether each of the four

infringed episodes entitled Gamma to a separate award of

statutory damages. The court held that Ean-Chea had wilfully

infringed upon Gamma's exclusive right to distribute the

video images of the Chinese language version of Jade Fox in

Massachusetts, and that Gamma could therefore recover

-7-
7

statutory damages. It then found that Gamma could recover

only one award of statutory damages for the infringement.

Meanwhile, on June 8, 1992, Ean-Chea had moved for

the return of its high-speed duplicating machines and

notebook, and for payment of the $2,500 bond posted by Gamma.

On July 3 the court ordered that the materials be returned,

but declined to order payment of the bond.1 On July 15

Gamma moved for costs under the Copyright Act, including

attorney's fees, and on December 12, 1992, Ean-Chea cross-

moved for attorney's fees.

In an opinion dated April 2, 1993, the district

court ruled upon Gamma's motion for costs and attorney's

fees, and Ean-Chea's cross-motion for attorney's fees. The

court awarded Gamma its costs and determined that Gamma, as

the "prevailing party," was eligible for an award of

attorney's fees. It also found that Gamma was entitled to a

fee award because Ean-Chea was a willful infringer. The

court denied Ean-Chea's cross-motion for fees. These appeals

ensued.

II.

DISCUSSION

On their respective appeals each party makes

several arguments. Ean-Chea maintains that: (1) as a matter

1. The articles are still in Gamma's possession pursuant to
an order of attachment.

-8-
8

of law, Gamma could not obtain a judgment for statutory

damages because the copyrights in the Cambodian language

episodes of Jade Fox were not registered; (2) Gamma violated

Ean-Chea's rights guaranteed by the Fourth Amendment in its

search of the premises of Overseas Video; (3) there was a

lack of statutory authority for seizing the duplicating

machines and notebook; and (4) the district court erred in

finding Gamma to be the "prevailing party" under the

Copyright Act, and that Ean-Chea was in fact the prevailing

party.

On its cross-appeal, Gamma contends that: (1) the

district court erred in finding that Ean-Chea had not

unlawfully copied the Hunters Prey videotapes; (2) the

district court erred in limiting Gamma to a single award of

statutory damages; and (3) the district court abused its

discretion in determining Gamma's attorney's fees award.

We review the district court's findings of fact for

clear error, and its conclusions of law de novo. See Lenn v.

Portland Sch. Comm., 998 F.2d 1083, 1087 (1st Cir. 1993).

Mixed questions of law and fact are also reviewed under a

clearly erroneous standard. I.C.C. v. Holmes Transp., Inc.,

983 F.2d 1122, 1128 (1st Cir. 1993).

-9-
9

A.

Ean-Chea's Appeal

As its first ground on appeal Ean-Chea argues that

Gamma could not obtain a judgment for statutory damages with

respect to the unlawful distribution of episodes thirteen

through sixteen of the Cambodian language version of Jade Fox

because the copyrights in those episodes were not registered.

Gamma argues that Ean-Chea infringed upon the registered

copyrights in the registered Chinese language version of

those episodes, and that it could enforce those copyrights.

The questions before this court are twofold: (1) did Ean-

Chea infringe upon rights that flow from the copyrights in

the Chinese language version of Jade Fox; and (2) could Gamma

enforce those rights.

As the district court recognized, two sets of

copyrights are at issue in this litigation, those in the

underlying works - the Chinese language episodes of Jade Fox,

and those in the derivative works2 created by Gamma - the

Cambodian language episodes of Jade Fox. See 17 U.S.C.

102(a) ("[c]opyright protection subsists ... in original

2. "A `derivative work' is a work based upon one or more
preexisting works, such as a translation, musical
arrangement, dramatization, fictionalization, motion picture
version, sound recording, art reproduction, abridgement,
condensation, or any other form in which a work may be
recast, transformed or adapted. A work consisting of
editorial revisions, annotations, elaborations, or other
modifications which, as a whole, represent an original work
of authorship, is a `derivative work'." 17 U.S.C. 101.

-10-
10

works ... fixed in any tangible medium of expression ...

from which they can be reproduced"); 17 U.S.C. 103(b)

(derivative works are separately copyrightable).

Gamma owns the copyrights in the derivative works,

and TVB owns the copyrights in the underlying works. Any of

the exclusive rights comprised in a copyright may be

transferred in whole or in part. See 17 U.S.C. 201(d)(1).

By virtue of the licensing agreements, Gamma obtained certain

exclusive rights emanating from the copyrights in the

underlying works. Thus, Gamma owns exclusive rights flowing

from both sets of copyrights.

It is undisputed, however, that the copyrights in

Gamma's derivative works are unregistered. Accordingly,

Gamma cannot recover statutory damages, the only remedy it

sought, for the infringement of its exclusive rights arising

under these unregistered copyrights.3 Instead, Gamma may

only recover statutory damages if Ean-Chea's unauthorized

rental of the Jade Fox videotapes infringed upon exclusive

rights held by Gamma pursuant to the registered copyrights in

the underlying works.

3. To maintain an action for statutory damages, the
copyrights in the infringed works must be registered. 17
U.S.C. 412; Melville B. Nimmer and David Nimmer, 3 Nimmer

on Copyright, 14.04[E], at 14-59 (1993) (hereinafter

"Nimmer").

-11-
11

Ean-Chea maintains that it only infringed upon

rights held by Gamma arising out of the unregistered

copyrights in the derivative works. We disagree.

Although a derivative work may be separately

copyrighted, that copyright does not affect the copyright in

the underlying work. The statute provides that

[t]he copyright in a ... derivative work
extends only to the material contributed
by the author of such work, as
distinguished from the preexisting
material employed in the work, and does
not imply any exclusive right in the
preexisting material. The copyright in

such a work is independent of, and does

not affect ... any copyright protection

in the preexisting material.

17 U.S.C. 103(b) (emphasis added); see 1 Nimmer,

3.04[A], at 3-17 to -18 (1993). Thus the copyright in a

derivative work only protects the original elements

contributed by the author of the derivative work, in this

case the Cambodian language soundtrack created by Gamma. Any

elements that the author of the derivative work borrowed from

the underlying work, such as the video images in the Chinese

language episodes of Jade Fox, remain protected by the

copyrights in the underlying work. We are led inexorably to

the conclusion that Ean-Chea infringed upon copyrights in the

underlying works by renting out episodes of the Cambodian

version of Jade Fox which contained video images protected by

the registered copyrights in the Chinese version of Jade Fox.

-12-
12

Next we determine whether Gamma may recover for this

infringement.

Under the Copyright Act, the copyright owner of a

derivative work "has a cause of action for infringement by

reason of the substantial copying from the derivative work of

material which originally appeared in the underlying work."

1 Nimmer 3.05, at 3-30. This means that, if the copyright

owner in a derivative work is the exclusive licensee of

certain rights in the underlying work, it becomes the

copyright owner of the underlying work for the purpose of

exercising those rights. Id.; 17 U.S.C. 201(d)(2)

(transferee of any exclusive right is entitled "to all of the

protection and remedies accorded to the copyright owner").

In the present case, Gamma is the exclusive

licensee of the right to distribute, in Massachusetts, the

video images of the Chinese production of Jade Fox, in

conjunction with a Cambodian language soundtrack. See 17

U.S.C. 106 (exclusive rights include rights to copy the

work, prepare derivative works, and distribute the work to

the public by rental, sale or lease). Accordingly, Gamma may

recover for Ean-Chea's infringement. 17 U.S.C. 501(b)

("[t]he legal or beneficial owner of an exclusive right under

a copyright is entitled ... to institute an action for any

infringement of that particular right committed while he or

she is the owner of it"). It is irrelevant that what was

-13-
13

actually distributed by Ean-Chea was the derivative and not

the underlying work. See 1 Nimmer 3.05, at 3-31; see also

G. Ricordi & Co. v. Paramount Pictures, Inc., 189 F.2d 469

(2d Cir.), cert. denied, 342 U.S. 849 (1957) (performance of

play in which copyright registration had expired constituted

infringement of the registered copyright in the underlying

story from which play was derived); Grove Press, Inc. v.

Greenleaf Publishing Co., 247 F. Supp. 518 (E.D.N.Y. 1965)

(copying of unregistered English language translation of

French language novel infringed upon the registered copyright

in the underlying French language story).

Taking a somewhat scattershot approach to brief

writing, Ean-Chea identifies a host of infirmities with

respect to the seizure and impoundment order obtained and

executed by Gamma at the outset of this litigation. Ean-Chea

appears to argue that: (1) in executing the orders signed by

Judge Mazzone, Gamma violated Ean-Chea's Fourth Amendment

right to be free from unreasonable searches and seizures;

(2) 503(a) of the Copyright Act does not authorize the

seizure of videotape duplicating machines; (3) 509 does

not authorize the seizure of books and records (i.e., Ean-

Chea's notebook); and (4) although 509 authorizes the

seizure of videotape duplicating machines, Gamma failed to

follow the procedures set forth therein.

-14-
14

Ean-Chea has, generously speaking, provided a

superficial briefing of the above issues, often dedicating no

more then three or four conclusory sentences to a topic

before moving on. For this and other reasons we reject all

of the above contentions.

First we confront Ean-Chea's constitutional claim

arising under the Fourth Amendment. While there appears to

be some support for the substance of this argument, see

Paramount Pictures Corp. v. Doe, 821 F. Supp. 82, 90-91

(E.D.N.Y. 1993) (proposed seizure and impoundment order in

copyright case must specify with particularity the premises

to be searched and the articles to be seized or run afoul of

Fourth Amendment), Ean-Chea failed to present this argument

to the district court and is thus precluded from raising it

on appeal. See McCoy v. Massachusetts Institute of

Technology, 950 F.2d 13, 22 (1st Cir. 1991), cert. denied,

112 S. Ct. 1939 (1992) ("theories not raised squarely in the

district court cannot be surfaced for the first time on

appeal").

The next argument raised by Ean-Chea, which

implicates the scope of 503(a)4, was not presented at oral

4. Section 503(a) provides as follows:
At any time while an action under this
title is pending, the court may order the
impounding, on such terms as it may deem
reasonable, of all copies or phonorecords
claimed to have been made or used in
violation of the copyright owner's

-15-
15

argument, takes up a mere handful of sentences in its brief,

and is wholly unaccompanied by any developed argumentation.

We have consistently admonished litigants that they cannot

simply present this court with a shopping list of arguments

and then expect us to both develop and address each one.

Ean-Chea's argument with respect to 503(a) is presented in

such a cursory and mechanical fashion as to render it

unpreserved on appeal. See, e.g., Cohen v. Brown Univ., 991

F.2d 888, 903 (1st Cir. 1993) ("Litigants cannot preserve an

issue for appeal by raising a pennant and then moving on to

another subject"); Ryan v. Royal Ins. Co. of America, 916

F.2d 731, 734 (1st Cir. 1990) ("issues adverted to on appeal

in a perfunctory manner, unaccompanied by some developed

argumentation, are deemed to have been abandoned").

Ean-Chea's argument premised upon 509 is off

base. Although he spends a considerable amount of space on

this point, Ean-Chea fails to realize that 509 has no

bearing on the matter before us. Section 509(a) provides a

list of articles that may be seized and forfeited to the

United States in criminal prosecutions brought to enforce

exclusive rights, and of all plates,
molds, matrices, masters, tapes, film
negatives, or other articles by means of
which such copies or phonorecords may be
reproduced.
17 U.S.C. 503(a). This provision establishes a
discretionary power to order impoundment. Midway Mfg. Co. v.

Omni Video Games, Inc., 668 F.2d 70, 72 (1st Cir. 1981).

-16-
16

violations of the Copyright Act. The procedures referred to

by Ean-Chea, set forth in 509(b), apply only to seizures

and forfeitures described by subsection (a) of 509. See 17

U.S.C. 509(b). Because 509 is limited to criminal

actions, it is of no use to Ean-Chea in the present case.

Next, Ean-Chea appeals the attorney's fees

component of the district court's judgment. The focus of

Ean-Chea's discontent with the fee allowance in the present

case is that the district court determined that Gamma and not

he was the "prevailing party" below.

Section 505 of the Copyright Act provides as

follows:

In any civil action under this title, the
court in its discretion may allow the
recovery of full costs by or against any
party .... [T]he court may also award a
reasonable attorney's fee to the
prevailing party as part of the costs.

17 U.S.C. 505. "Under the Copyright Act, the `prevailing

party is one who succeeds on a significant issue in the

litigation that achieves some of the benefits the party

sought in bringing the suit.'" Video Views, Inc. v. Studio

21, Ltd., 925 F.2d 1010, 1022 (7th Cir.), cert. denied, 112

S. Ct. 181 (1991) (quoting Warner Bros., Inc. v. Dae Rim

Trading, Inc., 877 F.2d 1120, 1126 (2d Cir. 1989) (citation

omitted)).

We review de novo the district court's

determination that Gamma met the "prevailing party" test.

-17-
17

Domegan v. Ponte, 972 F.2d 401, 406 (1st Cir. 1992), vacated

on other grounds, 113 S. Ct. 1378 (1993) (citing cases).

Although prevailing party determinations are often reviewed

under an abuse of discretion standard, see McDonald v.

Secretary of Health and Human Services, 884 F.2d 1468, 1474

(1st Cir. 1989), such is not the case where, as here, no

facts are in dispute and application of the "prevailing

party" test presents a pure question of law warranting

plenary review. Domegan, 972 F.2d at 406-07 n.8.

Ean-Chea argues that Gamma did not "prevail"

because, prior to trial, it voluntarily dismissed the five

non-copyright claims contained in the complaint, conceded

that it was not entitled to statutory damages on twelve

episodes of Jade Fox whose copyrights had not been registered

prior to the commencement of this action, and failed to prove

infringement with respect to the Hunters Prey videotapes.

Although all of this is true, Gamma did succeed on its

infringement claim with respect to episodes thirteen through

sixteen of Jade Fox. While we recognize that Gamma

downscaled its case as the litigation proceeded, in light of

its victory vis- -vis the four episodes of Jade Fox, we have

little trouble in concluding that Gamma succeeded on a

"significant issue in the litigation." See Langton v.

Johnston, 928 F.2d 1206, 1226 (1st Cir. 1991) (significance

-18-
18

must be viewed in light of "the scope and tenor of the

litigation as a whole").

Furthermore, by virtue of its success, Gamma was

awarded $2,500 in statutory damages, and Ean-Chea was

permanently enjoined from further acts of infringement. This

restriction on Ean-Chea's future behavior marks a clear

change in the legal relationship between the parties enuring

to Gamma's benefit. In addition, the monetary judgment

recovered by Gamma on the merits of its claim is more than

sufficient to qualify it as a "prevailing party." See, e.g.,

Farrar v. Hobby, U.S. , , 113 S. Ct. 566, 573

(1992) (civil rights plaintiff who won only nominal damages

of one dollar still "prevailing party" and thus eligible for

attorney's fee award).

Ean-Chea points to the poor winning percentage

posted by Gamma and concludes that Gamma cannot possibly be a

"prevailing party." We disagree. In the first place, the

voluntarily dismissed claims were not copyright claims and

thus not germane to the determination of whether Gamma was a

"prevailing party" under the Copyright Act. More importantly,

this court has firmly rejected a "mathematical approach" to

the "prevailing party" determination. See Domegan, 972 F.2d

at 407 n.9. In any event, it is well settled that "the

degree of the plaintiff's overall success goes to the

reasonableness" and not the allowability of an attorney's fee

-19-
19

award. Farrar, U.S. at , 113 S. Ct. at 574 (quoting

Texas State Teachers Assn. v. Garland Independent School

Dist., 489 U.S. 782, 793 (1989)). We affirm the district

court's determination that Gamma was the "prevailing party,"

and hence eligible for a fee award.

We have considered Ean-Chea's remaining arguments

and find them to be without merit.

B.

Gamma's Cross-Appeal

As its first ground for appeal Gamma argues that

the district court clearly erred by finding that it failed to

prove that Ean-Chea had either reproduced or distributed the

videotapes of Hunters Prey.

We start with the proposition that the plaintiff in

a copyright action carries the burden of proof. Concrete

Machinery Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600,

605 (1st Cir. 1988); Motta v. Samuel Weiser, Inc., 768 F.2d

481, 483 (1st Cir.), cert. denied, 474 U.S. 1033 (1985). To

carry this burden a plaintiff must prove each of the elements

of copyright infringement: (1) ownership of the copyright;

and (2) copying by the defendant. Id. It is undisputed that

Gamma satisfied the first prong of this test, and Gamma

argues that it met the second through circumstantial evidence

presented at trial.

We have recognized that, in a copyright action,

-20-
20

proof by direct evidence of copying is
generally not possible since the actual
act of copying is rarely witnessed or
recorded. Normally, there is no physical
proof of copying other than the offending
object itself. Copying therefore is
generally established by showing that the
defendant had access to the copyrighted
work and that the offending and
copyrighted articles are "substantially
similar."

Concrete Machinery Co., 843 F.2d at 605. "Copying is

demonstrated when someone who has access to a copyrighted

work uses material substantially similar to the copyrighted

work in a manner which interferes with a right protected by

17 U.S.C. 106." Ford Motor Co. v. Summit Motor Products,

Inc., 930 F.2d 277, 291 (3d Cir. 1991) (footnote omitted).

Among the rights protected by 106 are the rights to copy

and distribute the copyrighted work.

Both access and substantial similarity are

undisputed in the present case, and there was no question

that the videotapes of Hunters Prey found in Ean-Chea's store

were piratical copies.5 Ean-Chea, however, disclaimed any

knowledge of the Hunters Prey tapes found at his store, and

denied that he had ever copied or distributed tapes of

Hunters Prey. Ean-Chea testified that a customer must have

rented the tapes at another video store and accidentally

returned them to Overseas Video.

5. "Piratical" copies are copies made without authorization
of the copyright owner. H.R. Rep. No. 1476, 94th Cong., 2d
Sess. 162, reprinted in 1976 U.S.C.C.A.N. 5659, 5785.

-21-
21

The function of the district court acting as fact-

finder was to determine, by weighing all of the evidence, if

Gamma had met its ultimate burden of persuasion. The court

concluded that it had not. The court found that "[t]he only

direct evidence with respect to Hunters Prey is that at the

time of the raid there were ... 10 or 11 tapes, in a box near

the counter." Viewing this evidence along with the

circumstantial evidence, which consisted primarily of the

fact that videotape copy machines were found at Ean-Chea's

store, the district court found that either of two

conclusions were possible: either (1) appellant had copied

tapes of Hunters Prey and/or held them out for distribution;

or (2) the tapes belonged to another store and some customer

erroneously returned them to Ean-Chea's store. According to

the district court, the latter "is an equally believable

version on the basis of the evidence ...." Id.

Taken as a whole the court found that the evidence

was ambiguous to the extent that it was "not prepared to draw

the inference" that Gamma wished it to draw, namely, that

Ean-Chea either copied or distributed videotapes of Hunters

Prey.

Although the evidence could have supported a

finding of infringement, the district court credited a

plausible, lawful explanation for the presence of the tapes

at Ean-Chea's store. It is established beyond cavil that the

-22-
22

trial judge is in the best position to assess the credibility

of witnesses, see Wainwright v. Witt, 469 U.S. 412, 428

(1985) (assessing the credibility of witnesses is peculiarly

within the trial judge's province), and great deference must

be given to a trial court's findings based on credibility

determinations. Rodriguez-Morales v. The Veterans

Administration, 931 F.2d 980, 982 (1st Cir. 1991). "Where

there are two permissible views of the evidence, the

interpretation assigned by the fact-finder must be adopted."

Id. Given the restricted nature of our review of the

district court's findings of fact, we cannot say that it

clearly erred in finding that Gamma failed to carry its

burden of proving that Ean-Chea had either made unauthorized

copies or unauthorized rentals of videotapes of Hunters Prey.

Gamma argues that it is entitled to four awards of

statutory damages for Ean-Chea's willful infringement of

episodes thirteen through sixteen of Jade Fox. Under the

Copyright Act a party may seek an award of statutory damages

"in lieu" of actual damages. 17 U.S.C. 504(c). Section

504(c) provides for an award of statutory damages "for all

infringements involved in the action, with respect to any one

work," and further provides that for "purposes of this

subsection, all the parts of a compilation or derivative work

-23-
23

constitute one work." 17 U.S.C. 504(c)(1) (emphasis

added).

The district court gave Gamma a single award of

statutory damages. Although Ean-Chea was found to have

infringed upon the copyrights in four separate episodes of

Jade Fox, the court found that these episodes constituted one

"work" for purposes of computing statutory damages. Since

the district court's findings on this issue were

substantially influenced by its choice of a different legal

standard than we apply, its determination on this mixed

question of law and fact is entitled to less deference on

review than would be accorded a pure finding of fact. See

United States v. Howard, 996 F.2d 1320, 1327 (1st Cir. 1993);

see also Picture Music, Inc. v. Bourne, Inc., 457 F.2d 1213,

1215 n.5 (2d Cir. 1972) (rejecting "clearly erroneous"

standard when reviewing whether work was created "for hire"

under 24 of Copyright Act).

Our discussion is guided by the Second Circuit's

recent decision in Twin Peaks Productions v. Publications

Intern., 996 F.2d 1366 (2d Cir. 1993). The issue in Twin

Peaks was whether eight separately written teleplays (or

videotapes of eight televised episodes)6 of the television

program Twin Peaks constituted eight works or a single work

6. The court indicated that its holding applied whether
written teleplays or videotaped television episodes were at
issue. Twin Peaks, 996 F.2d at 1381.

-24-
24

under 504(c). The district court found that the

infringement of each episode warranted its own award of

statutory damages, and the court of appeals affirmed.

The eight Twin Peaks episodes, as the Second

Circuit explained, "represent a current television genre in

which one or more plots continue from one episode to

another." Id. at 1381. In fact, Twin Peaks carried the

point of the basic plot - who killed Laura Palmer -

throughout its first season. On the issue of statutory

damages, the court stated:

The author of eight scripts for eight
television episodes is not limited to one
award of statutory damages just because
he or she can continue the plot line from
one episode to the next and hold the
viewers' interest without furnishing a
resolution. We might well have a
different situation if a book written as
a single work was then adapted for
television as a group of episodes, for
example, the six-part television
adaptations of John LeCarre's "Tinker,
Tailor, Soldier, Spy" and "Smiley's
People." Even in such circumstances,
though there would be but one book
infringed, there might be separate awards
for infringement of each televised
episode.

Id. The Second Circuit found that Twin Peaks was an easy

case, and that the eight teleplays or televised episodes

clearly constituted eight separate works. While our case

strongly resembles Twin Peaks, we pause here to assay some

differences.

-25-
25

First, the copyrights in episodes thirteen through

sixteen of Jade Fox were registered on a single registration

form, while the eight episodes of Twin Peaks were "separately

copyrighted." Id. Second, there was no evidence submitted as

to whether the scripts for episodes thirteen through sixteen

of Jade Fox were separately written, whereas the eight

episodes of Twin Peaks were based upon separately written

teleplays. Id.

We take a step back, at this juncture, to discuss

some background concerning statutory damages in copyright

actions. Unlike the Copyright Act of 1909, under which

statutory damages were available for "each infringement that

was separate," Robert Stigwood Group, Ltd. v. O'Reilly, 530

F.2d 1096, 1102 (2d Cir. 1976), the present Copyright Act

"shifts the unit of damages inquiry from number of

infringements to number of works." Twin Peaks, 996 F.2d at

1381. The House Report concerning 504(C)(1) makes it clear

that,

although the minimum and maximum amounts
[of statutory damage awards] are to be
multiplied where multiple "works" are
involved in the suit, the same is not
true with respect to multiple copyrights,
multiple owners, multiple exclusive
rights, or multiple registrations.

H.R. Rep. No. 1476, 94th Cong., 2d Sess. 162, reprinted in

1976 U.S.C.C.A.N. 5659, 5778.

-26-
26

The term "work," is undefined under the Copyright

Act. Although the Twin Peaks court did not undertake the

task of supplying a definition, one court of appeals has

posited that "separate copyrights are not distinct works

unless they can `live their own copyright life.'" Walt

Disney Co. v. Powell, 897 F.2d 565, 569 (D.C. Cir. 1990)

(quoting Stigwood 530 F.2d at 1105).7 The test set forth in

Walt Disney is a functional one, with the focus on whether

each expression (or in our case, television episode) has an

independent economic value and is, in itself, viable. See

Walt Disney, 897 F.2d at 569; see also 3 Nimmer 14.04[E],

at 14-64.

The district court's determination that all four

episodes of Jade Fox were one "work" for the purpose of

statutory damages was based on two facts: that Gamma sells

or rents only complete sets of the Jade Fox series to video

stores, and the copyrights in the four episodes at issue were

registered on one form. The former fact, according to the

district court, "suggests plaintiffs view the Jade Fox

episodes as one work for economic purposes notwithstanding

7. Walt Disney arose under the Copyright Act of 1976 and

involved the infringement of six copyrights, each protecting
a distinct pose of either Mickey or Minnie Mouse. The court
held that the defendant had only infringed upon two works,
Mickey and Minnie, for purposes of assessing statutory
damages. See Walt Disney, 897 F.2d at 570 ("Mickey is still

Mickey whether he is smiling or frowning, running or walking,
waving his left hand or his right.").

-27-
27

the rental by consumers of only a few episodes at a time or

its production in separate episodes[,]" while the latter

fact "indicates [that] TVB [the author of Jade Fox]

considered at least these four episodes to be one work." We

do not find the district court's reasoning compelling.

Starting with the district court's second point, we

find that there is simply no authority for drawing such an

inference. Under regulations promulgated by the Copyright

Office, the copyrights in multiple works may be registered on

a single form, and thus considered one work for the purposes

of registration, see 37 C.F.R. 202.3(b)(3)(A), while still

qualifying as separate "works" for purposes of awarding

statutory damages.8 We are unable to find any language in

8. The regulation states in pertinent part:
For the purpose of registration on a
single application and upon payment of a
single registration fee, the following
shall be considered a single work: (A)
In the case of published works: All
copyrightable elements that are otherwise
copyrightable as self-contained works,
that are included in a single unit of
publication, and in which the copyright
claimant is the same ....
37 C.F.R. 202.3(b)(3)(A). Although we question whether the
four episodes of Jade Fox at issue here were "included in a

single unit of publication," since episodes thirteen through
sixteen of Jade Fox are contained on two videotapes, this

goes to the issue of TVB's compliance with the copyright
regulations, not whether Gamma is entitled to multiple awards
of statutory damages. As the legislative history to
504(c)(1) makes clear, the number of copyright registrations
is not the unit of reference for determining the number of
awards of statutory damages. Moreover, we note that the Twin

Peaks court did not rely on the number of copyright

registrations in reaching its result. See Twin Peaks, 996

-28-
28

either the statute or the corresponding regulations that

precludes a copyright owner from registering the copyrights

in multiple works on a single registration form while still

collecting an award of statutory damages for the infringement

of each work's copyright.

With regard to the district court's first point,

that Gamma sells or rents only complete Jade Fox sets to

video stores, we do not find this fact persuasive in the

present inquiry. A distributor's decision to sell or rent

complete sets of a series to video stores in no way indicates

that each episode in the series is unable to stand alone.9

More significant for present purposes is the fact that (1)

viewers who rent the tapes from their local video stores may

rent as few or as many tapes as they want, may view one, two,

or twenty episodes in a single sitting, and may never watch

or rent all of the episodes; and (2) each episode in the Jade

Fox series was separately produced.

F.2d at 1381.

9. If the distributor of the Rocky series of motion pictures

required video stores to purchase all five of the movies, or
alternatively, packaged the movies as a boxed set for resale,
the five movies would not suddenly become one "work" for the
purpose of damages. See, e.g., Cormack v. Sunshine Food

Stores, Inc., 675 F. Supp. 374, 377 (E.D. Mich. 1987)

(written tests designed to detect honesty and emotional
status, respectively in the workplace are not one "work" for
the purpose of statutory damages just because they are
packaged and sold together).

-29-
29

While our case arguably falls somewhere between the

Twin Peaks and the hypothetical novel turned television mini-

series scenario presented therein, 996 F.2d at 1381, it more

closely resembles Twin Peaks than the hypothetical. Each

episode of Jade Fox was produced independently from the other

episodes, and each episode of Jade Fox was aired on

television independently from the preceding and subsequent

episodes.10 In addition, unlike the "Tinker, Tailor,

Soldier, Spy" hypothetical in Twin Peaks, our case does not

involve the infringement of a single book, but rather, much

like Twin Peaks, involves the infringement of four

separately-produced television episodes prepared as part of a

weekly (or perhaps daily) series. We conclude that Gamma is

entitled to four awards of statutory damages for Ean-Chea's

infringement of four separate "works."

As its final argument on its cross-appeal, Gamma

contests the district court's attorney's fee award. The fee

application requested a total of $80,198.62 and costs in the

amount of $7,608.87. The district court awarded all of the

requested costs, but substantially reduced Gamma's fee

request, awarding $12,500. This reduction was based on a

multitude of factors.

10. Because no English translation of the episodes was
provided below, the district court was unable to study the
episodes' plots to gauge their relation to each other.

-30-
30

Generally speaking, the district court found that

Gamma had "over-prosecuted this case, pursued infringement

actions on works that were not registered, and achieved very

limited success." More specifically, the court found that

plaintiffs had originally "filed a six-count complaint

alleging a massive scheme of wrongdoing, ... seeking millions

of dollars in damages," and then, armed with a court order,

raided Ean-Chea's store ... apparently
expecting to uncover a huge cache of
infringing materials. Instead, what they
found was a single set of pirated
`Hunters Prey' tapes located under some
trash in a cardboard box by the counter,
some high speed video copying equipment,
and a business record that reflected the
shipment of one unauthorized copy of a
program entitled `Serpentine Romance' to
Montreal.

The court further noted that, as trial neared, Gamma

dismissed the five non-copyright claims, "and conceded that

because [the copyrights in] Serpentine Romance and twelve

episodes of Jade Fox had not been registered prior to the

filing of the lawsuit, they too fell out of the case."

With respect to Gamma's fee request, the court had

much to say:

many of the [time-sheet] entries were
extremely vague, making it virtually
impossible ... to determine whether
requested hours were excessive, redundant
(especially with respect to how New York
and local counsel divided tasks), or
otherwise unnecessary, as well as to
parse out attorney time and expenses
related to the unsuccessful claims and

-31-
31

[voluntarily] dismissed portion of the
case.

The district court then pointed out numerous ambiguities in

the attorneys' records, as well as instances where telephone

conversations between counsel were reflected only in the

records of one of the two attorneys. Finally the court

provided examples of charges that appeared facially

excessive, such as billing the client for leaving a telephone

message when the person telephoned was absent. The court

settled on a fee award that it believed represented

reasonable compensation for the nature of the work performed,

taking into account how much time was actually expended.

The district court found that the time-sheet

entries submitted by Gamma's attorney's were so ambiguous

that it was not clear which claims in the complaint the

entries related to. For example, the district court noted

entries that stated merely "Draft documents," "Work on Case,"

"Review of Discovery," and "study file, legal research re

Mass. case."

We review fee awards for abuse of discretion, see

Foley v. City of Lowell, Mass., 948 F.2d 10, 18-19 (1st Cir.

1991), and "'normally prefer to defer to any thoughtful

rationale and decision developed by a trial court and to

avoid exhaustive second guessing.'" Domegan, 972 F.2d at 421

(quoting Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950

(1st Cir. 1984)).

-32-
32

Under the circumstances, the district court clearly

acted within the broad limits of its discretion by

substantially discounting Gamma's fee request. Finding no

abuse, we affirm the district court's fee award.

Each party contends that, under 17 U.S.C. 505, it

is entitled to recover its costs, including attorney's fees,

incurred on this appeal. In addition, Gamma seeks sanctions,

in the form of attorney's fees, under Fed. R. App. P. 38.

Rule 38 allows for fees and double costs to be awarded to an

appellee where the appellant has brought a frivolous appeal.

While Ean-Chea did not prevail on his appeal, we do not feel

that this case warrants the imposition of sanctions under

Rule 38.

While it is true that, under 505, the Copyright

Act, this court may make an award of attorney's fees to the

prevailing party for services rendered on appeal, see Twin

Peaks, 996 F.2d at 1383; see also 3 Nimmer 14.10[E], at

14-129 ("An award of attorney's fees may be made for services

rendered on appeal as well as at the trial level"), we

decline to do so. Because he did not prevail on his appeal

or the cross-appeal, Ean-Chea is not entitled to an award of

fees. The appeal, however, was not frivolous, and Gamma only

achieved limited success on its cross-appeal. Therefore, in

the exercise of our discretion we decline to award Gamma

-33-
33

appellate fees. Gamma is, of course, entitled to costs on

appeal.

III.

CONCLUSION

On Ean-Chea's appeal, the judgment of the district

court is affirmed. On Gamma's cross-appeal, the judgment of

the district court is affirmed except that we reverse its

finding as to the number of "works" infringed upon by Ean-

Chea for the purpose of calculating statutory damages. We

hold that Ean-Chea infringed upon four works, not one. We

therefore vacate the district court's judgment ordering Ean-

Chea to pay Gamma $2,500 in statutory damages, and remand to

the district court for a redetermination of damages based

upon our holding.

-34-
34